Gaston HIX, Appellant,

v.

TULOSO–MIDWAY INDEPENDENT
SCHOOL DISTRICT et al.,
Appellees.

No. 722.

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 29, 1972.

Rehearing Denied Jan. 18, 1973.

Lyman & Sudduth, Charles G. Lyman, Corpus Christi, for appellant.

Wood, Burney, Nesbitt & Ryan, Frank W. Nesbitt, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is an appeal from a summary judgment entered in favor of defendants in a suit that was brought by Gaston Hix, a school teacher, against a school district, its trustees and its superintendent, for failure to renew his teaching contract. The defendants were: the Tuloso-Midway Independent School District; its Board of Trustees as that body was constituted on October 23, 1968 (and all future Boards), the members of which were sued in their official capacities; six of the seven members of the Board of Trustees as that body was constituted in March, 1968, who were sued individually and in their official capacities; and L. R. Reaves, Superintendent of the School District, who was sued individually and in his official capacity.

Plaintiff alleged that his teacher's contract, which expired at the end of the 1967–1968 school year (September 1, 1968), was not renewed by the Board of Trustees,

that no reason or explanation was ever given him by any of the defendants for such refusal, that the Board of Trustees (as of March, 1968) refused to grant him a hearing with reference thereto, that the true reason why his contract was not renewed was because he had been active in legitimate teacher organizations, that at the time in question the School District had in force and effect a contract renewal or tenure policy whereby he was entitled to have his contract renewed so long as he carried out his duties as a teacher and complied with the laws governing such matters, that the defendants were estopped to deny that the School District had such a tenure policy in force and effect, and that he was entitled to have his contract renewed as a matter of law. He charged that Superintendent Reaves and the members of the Board of Trustees who were sued individually acted arbitrarily, in bad faith, and deliberately violated his constitutional rights.

Plaintiff prayed for a declaratory judgment that Article 2891-50, Vernon's Ann. Civ.St. was, in March of 1968, mandatory upon the School District and its Trustees, requiring them to renew his teacher contract; that the Board of Trustees be compelled to pay him all back salary in full; and that he be reinstated and re-employed for all subsequent school years, commencing September of 1968, at a salary not less than the amount paid to him during the school year of 1967–1968. In the alternative, he asked for monetary damages against all defendants who were sued in their official capacities. He also sought actual and exemplary damages against the defendants, jointly and severally, who were sued individually.

Plaintiff's motion for summary judgment asserted that as the Board of Trustees refused him a hearing on its decision not to renew his contract, although he duly and timely demanded such a hearing, he was entitled to judgment for the relief prayed for as a matter of law. The defendants, by a motion for partial summary

judgment, sought to have the allegations of contract renewal policy, estoppel to deny that same existed, and the applicability of Article 2891-50, V.A.C.S., eliminated from the case on the ground that no genuine issue of material fact with reference thereto was presented by the pleadings, depositions, affidavits and exhibits on file. Thereafter, defendants filed a blanket motion for summary judgment wherein they averred that there is no genuine issue as to any material fact relating to that portion of plaintiff's cause of action predicated upon the allegations that the defendants, or some of them, willfully and maliciously failed to renew plaintiff's contract, that the named individual defendants willfully and maliciously induced the Board of Trustees not to renew said contract, and that the actions and conduct of defendants violated plaintiff's constitutional rights.

The defendants' motions for summary judgment were granted and plaintiff's motion therefor was denied. A take nothing judgment was entered. Plaintiff has appealed. We affirm.

Plaintiff was employed as a teacher by the School District and its Board of Trustees continuously during the school years 1962–1968. His first contract was dated June 8, 1962 and was for one year. His last contract was dated May 24, 1966 and was for two years, 1966–1967 and 1967–1968, which expired according to its own terms on September 1, 1968. Plaintiff was notified in March, 1968, that he had not been re-employed for the next ensuing school year. No reason of any kind or character was ever stated or given by the Board of Trustees for its refusal to re-employ plaintiff. The Board refused to grant plaintiff a hearing on the matter.

■ Article 2891–50, V.A.C.S., was passed by Acts of the 60th Legislature in 1967. Section 2 of the Act reads as follows:

"Sec. 2. Each teacher *hereafter employed* by any school district in this

State shall be employed under, and shall receive from such district, a contract that is either a 'probationary contract' or a 'continuing contract' in accordance with the provisions of this Act *if the school board chooses to offer such teacher a 'probationary contract' or a 'continuing contract.'* All such contracts shall be in writing, in such form as may be promulgated by or approved by the commissioner of Education of the State of Texas, and shall embody the terms and conditions of employment hereinafter set forth, and such other provisions not inconsistent with this subchapter as may be appropriate." (Emphasis supplied.)

The Act became effective on August 27, 1967. It applies *only* to teachers who are employed after its effective date and then *only* if the school board adopts the tenure plan offered thereby. We construe the words "hereafter employed", as used in the Act, to refer only to those teachers who executed a contract after August 27, 1967; they do not relate to teachers who were then employed under a contract that was made prior thereto. Plaintiff was already employed under a contract when the Act became effective. The statute is not mandatory on a school district. It is discretionary and permissive. In essence, a school board is given a choice of coming under the Act by adopting the tenure plan set out therein, or continuing to contract under prior existing laws. In the instant case, it is conclusively shown that the Board of Trustees for the School District did not adopt the tenure plan authorized by the statute. The Board of Trustees never offered plaintiff a "probationary" or a "continuing contract". Therefore, plaintiff's contentions that the Act was, in March of 1968, mandatory upon the School District and its Board of Trustees, and that the statute required that his last contract be renewed, cannot be sustained. We so hold.

Plaintiff argues Cummins v. Board of Trustees of Eanes Independent School District, 468 S.W.2d 913 (Tex.Civ.App.—Austin 1971, n. w. h.) in support of his position. That case is not in point. There, the school district, in effect, had adopted the tenure plan authorized by Article 2891–50, V.A.C.S. The teacher had been given a "probationary contract" for the school year commencing August 28, 1969.

Plaintiff also contends that the School District had in effect an express teacher contract renewal policy by virtue of the 1958 published set of Policies, which contained the following statement:

"We also have a continuing contract in this school which means if satisfactory work is being done the contracts are automatically extended for one year."

That set of Policies was revised in 1960. The Policies were again revised in 1963 and in 1965. The above quoted "continuing contract" provision contained in the 1958 set of Policies does not appear in any of the published Policies of 1960, 1963 or 1965. Plaintiff first became aware of the 1958 policy provision with respect to "continuing contracts" in the fall of 1962. He knew, however, that such tenure provision had been eliminated from the 1960, 1963, and 1965 revisions.

All of the contracts between plaintiff and the School District were in writing. None of them contained any provision for a continuing contract, renewal thereof, or tenure. There was no discussion at any time between plaintiff and the Board of Trustees (or with the Superintendent) of official policies regarding continuing contracts. No official of the School District ever represented to plaintiff that a policy providing for tenure existed. Plaintiff did not, after discovering the continuing contract provision in the 1958 set of Policies, discuss the same with anybody representing the School District. No member of the Board of Trustees, the Superintendent, or any other representative of the School District, ever led plaintiff to believe that any official tenure policy was in effect. Plaintiff was never induced by anyone to sign a

teaching contract in the belief that a "continuing contract" policy existed in his favor.

■ The attorney for the School District, in a letter, dated May 2, 1968, addressed to the State Commissioner of Education, stated: "The policy then and now is to reward satisfactory work by extending their (teachers') contracts, but this has been done by action of the Board each March". Plaintiff says that this statement is proof of a *de facto* tenure policy that clearly implies promise of continued employment. We do not agree. The published school board Policies in effect at all times pertinent to this appeal never expressed anything indicating that it would renew any teacher contract when it expired; furthermore, such policies expressly limited the term of teachers' contracts to two years. The mere fact that a teacher has been rehired each year for a period of years does not constitute any evidence that the School District had impliedly contracted with the teacher to renew the contract every year. Successive renewals of a teacher's contract with admissions by school representatives that such renewals were the reward for satisfactory work does not constitute evidence of *de facto* tenure policy of the school district, or of any implied agreement on the part of the school district that a teacher has a contractual right of renewal so long as the work performed is satisfactory.

There are no facts shown by the record in this case that raise the issue of a *de facto* tenure policy. No evidence is presented that plaintiff and the Board of Trustees impliedly agreed or had a mutually explicit understanding that plaintiff's last contract would be renewed upon expiration thereof.

■ Article 2781, V.A.C.S., expressed public policy with respect to the length of term for which teachers of an independent school district may legally be employed. That statute, in part, reads:

"The Board of Trustees of . . . any independent school district may employ a . . . teacher . . . in the school therein for a term not to exceed three years. . . ."

The tenure policy of the School District that plaintiff says was in effect, be it express, *de facto* or implied, would be contra to Article 2781, and void, as it would have generated an automatic teacher contract renewal procedure, the effect of which would have resulted in a term that was not limited by three years but by the failure of the teacher to render satisfactory service. Fromen v. Goose Creek Independent School District, 148 S.W.2d 460 (Tex.Civ. App.—Galveston 1941, writ dism'd judg. corr.). We hold that the Tuloso-Midway Independent School District and its Board of Trustees did not, in March, 1968, have in force and effect, an express, *de facto* or implied teacher contract renewal policy, and that it is not estopped to deny the same.

Plaintiff was a member of several teacher organizations. During the 1967–1968 school year, he was president of the Tuloso-Midway Classroom Teachers Association and was very active in that organization. He contends that there is evidence that the real reason for his contract not being renewed was in retaliation for his activities in that organization. That contention is not borne out by the record.

In March, 1968, it was the published policy of the Board of Trustees "to elect school employees on recommendation of the superintendent" and to pass upon renewal contracts in "March before the expiration of contracts". In conformity with these policies, the Board of Trustees, in or about the early part of March, 1968, asked Superintendent Reaves for a recommendation concerning the renewal of plaintiff's contract. He recommended that plaintiff's contract not be renewed. The Board of Trustees then followed that recommendation. In doing so, it simply carried out its existing policy procedure. There is no ev-

idence that the Board of Trustees, in refusing to renew plaintiff's contract, made any charge, public or private, that damaged plaintiff's standing in the community where he lived and worked. The action by the Board did not impose on plaintiff any stigma that foreclosed or hindered his freedom to take advantage of other employment opportunities in the teaching profession.

■ The depositions, affidavits and exhibits filed with the trial court comprise 1100 pages. The summary judgment evidence, which we must construe most favorably to plaintiff at this stage of the litigation, does not present a genuine issue of fact as to whether the Board of Trustees refused to renew plaintiff's teaching contract as a reprisal for the exercise of constitutionally protected rights. There is no evidence that the Board of Trustees refused to re-employ plaintiff because of his activities in teacher organizations. On the contrary, it is conclusively shown that his contract was not renewed by the Board solely because of an unfavorable recommendation by Superintendent Reaves.

Plaintiff also asserts that the failure of the Board of Trustees to grant him a hearing on its decision not to re-employ him violated his constitutional rights. We disagree.

Under the facts and circumstances presented by this appeal, the Board of Trustees, under Texas Law, had the exclusive right and sole legal authority to re-employ or not re-employ plaintiff, with or without reason, so long as his constitutional rights were not violated. The last contract made between plaintiff and the defendant School District made no provision for renewal. The terms of that contract secured absolutely no interest in re-employment for any term beyond September 1, 1968, its termination date. Plaintiff had neither legitimate claim nor legal expectation of re-employment. Plaintiff did not show that he had any legal right that was either in force at the time of failure to re-

new his contract or that extended beyond its date of termination. In these circumstances, while plaintiff had an abstract concern in being rehired, he did not have any interest, property or otherwise, that required the school authorities to give him a hearing when they refused to renew his contract of employment. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ In Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) it was said:

"We have held today in *Board of Regents v. Roth, ante,* that the Constitution does not require opportunity for a hearing before the nonrenewal of a nontenured teacher's contract, unless he can show that the decision not to rehire him somehow deprived him of an interest in 'liberty' or that he had a 'property' interest in continued employment, despite the lack of tenure or a formal contract. In *Roth* the teacher had not made a showing on either point to justify summary judgment in his favor."

At the time in question, there was no statute, administrative rule or Texas decision that required the Board of Trustees to give plaintiff a hearing on the cause of nonrenewal of his contract. Plaintiff did not show that he was deprived of any interest that could invoke procedural due process protection. The mere showing that he was not rehired, without more, did not amount to a showing of loss of liberty. Nor did it amount to a showing of a loss of property. We, therefore, hold that the Board's failure to furnish plaintiff a statement of the reasons as to why he was not re-employed, and its refusal to grant a hearing with respect thereto, did not violate his constitutional guarantee of procedural due process. Perry v. Sindermann, supra.

■ Plaintiff's suit for damages cannot be maintained against the Tuloso-Midway Independent School District, its Trustees in their official capacities and its Superin-

tendent in his official capacity, because of governmental immunity existing in this State in favor of school districts, its trustees and agents. Campbell v. Jones, 153 Tex. 101, 264 S.W.2d 425 (1954); Braun v. Trustees of Victoria Independent School District, 114 S.W.2d 947 (Tex.Civ.App.— San Antonio 1938, writ ref'd).

In Russell v. Edgewood Independent School District, 406 S.W.2d 249 (Tex.Civ. App.—San Antonio 1966, writ ref'd n. r. e.), a teacher who was discharged sued the school district and B. F. Steinhauser, its superintendent, for actual and exemplary damages. A take nothing judgment was affirmed on appeal. The Court held that governmental immunity existed in behalf of the school district and of its superintendent. On the matter of personal liability of its superintendent, it was said:

> "It is the duty of a school superintendent, when directed by the Board of School Trustees, to recommend the employing and discharging of teachers, and he is not answerable in a cause sounding in tort for his actions while discharging this governmental educational function."

> \* \* \* \* \* \*
> ". . . As long as Steinhauser was acting within the scope of his employment as a school superintendent he cannot be held personally liable in a tort action, except in such cases which involve individual and separate torts, such as assault, trespass, fraud or conversion."

The rules announced in the foregoing case control the damage question relating to the personal liability of the persons who were sued individually herein. We are aware that plaintiff alleged in his pleadings that Superintendent Reaves abandoned his duties as superintendent and had become an individual and a mere intermeddler; there is no evidence, however, that such actually occurred. The recommendation by Reaves that plaintiff not be re-employed was clearly and decisively shown to have been made in connection with the carrying out of his duties as superintendent. Neither Reaves nor the school trustees are personally liable in damages by reason of the alleged torts claimed to have been committed by them.

Under the pleadings and the evidence plaintiff did not establish a cause of action for damages against any of the defendants. We have carefully considered all of plaintiff's points of error and they are all overruled. The actions by the trial court in denying plaintiff's motion for summary judgment and in granting defendants' motions therefor were correct. The trial court properly rendered summary judgment that plaintiff take nothing by his suit.

The judgment of the trial court is affirmed.