**H. L. MOORE, Plaintiff,**

v.

**J. C. KNOWLES et al., Defendants.**

**Civ. A. No. 2–901.**

United States District Court,
N. D. Texas,
Amarillo Division.

June 13, 1974.

Larry Watts, Walker, Strahan, Brunson & Watts, Houston, Tex., Stephen J. Pollak, Richard M. Sharp, William S. Moore, Shea & Gardner, Washington, D. C., for plaintiff.

R. A. Wilson, Underwood, Wilson, Sutton, Berry, Stein & Johnson, Amarillo, Tex., for defendants.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The plaintiff in this suit is a former teacher employed by the Borger Independent School District who last taught in that system in the 1969–1970 school year but his contract to teach in 1970–1971 was not renewed. The defendants are the superintendent of schools in his official capacity, the Borger Independent School District and the Board of Trustees of the Borger Independent School District in their official capacities. None of the individuals are sued in their private capacity. This court has jurisdiction under Title 28, United States Code, Section 1331 and the plaintiff alleges further jurisdiction under Title 42, United States Code, Section 1983.

This suit was originally tried by this court in October of 1971 and the Court of Appeals for the Fifth Circuit on petition for rehearing in Moore v. J. C. Knowles, 482 F.2d 1069 (1973), affirmed in part the original judgment of this court and vacated in part and remanded to the district court for further proceedings. Accordingly the case was called for trial in Amarillo, Texas on the 25th day of February, 1974 with all parties and their attorneys appearing in open court and announcing ready for trial before the court without a jury.

This Memorandum Opinion shall constitute the court's Findings of Fact and Conclusions of Law necessary to the entry of the appropriate judgment. Inasmuch as the parties did by stipulation enter into evidence the entire record of the first trial, the court here adopts its Memorandum Opinion and Order of October 28, 1971 as a part of the Findings of Fact for this second trial, where appropriate, and such Memorandum Opinion is incorporated herein for all purposes.

At the trial of this case on February 25 and 26, 1974, evidence was introduced for consideration by the court to determine whether or not the plaintiff, H. L. Moore, had a status sufficiently close to tenure or a contract right that would entitle him to possess a "property" interest in future employment under the standards laid down by the United States Supreme Court in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Facts are here found by the court in addition to and supplemental to those in the first opinion. The superintendent of the Borger Independent School District, J. C. Knowles, had authority to hire teachers prior to any board action and until the next monthly board meeting. Further, it was a part of his duties to submit to the board of trustees, prior to March 1st of each year, a list of those teachers that he recommended to be employed as teachers for the next ensuing school year. He also had the duty of proposing manuals for procedures and proposed policies for the school district and pursuant to this duty there had been prepared under his direction, and with the assistance of an advisory committee composed of members of the community and the school board, a manual which was introduced into evidence as Plaintiff's Exhibit 4, which was adopted on September 10, 1968. This manual is the policy manual of the Borger Independent School District which was in force and effect during Mr. Moore's last year of employment and at the time that he was suspended from his duties in early 1970 and at the time that the board failed to renew his teaching contract for an additional year. This manual was made available to the teachers and the administration of the school system, including the principals, were asked to review the manual with their teachers. This was done in teachers' meetings and in informal discussions.

The pertinent parts of these rules and policies are Rule 7.06 found on page 44 which reads as follows:

"Employment of Teachers

"A. The Board of Education employs teachers on a one year contract

upon the recommendation of the Superintendent of Schools. Renewal of all teacher contracts shall be acted upon on or before the March meeting of the Board. All teachers employed at the beginning of a school year or prior to January 1, 1968, shall be considered as recommended for continuance, unless otherwise notified in writing by the Superintendent on or before the first day of March[.]

"B. All teachers employed to each in the Borger School System must hold the bachelor's degree from an institution accredited by the Southern Association of Colleges and Secondary Schools, or some comparable agency. The teacher, in order to be eligible to teach in the Borger System, must hold a valid teaching certificate, or eligibility, issued by the State of Texas with preparation and training in the specific academic field, or fields, and/or grade level involved in the assignment. Exceptions may be made only in case of emergencies and on a temporary basis[.]"

and Rule 7.32 which appears on page 58 of Plaintiff's Exhibit 4 and reads as follows:

"Termination of Contract and Procedure for Dismissal

"The Board reserves the right to terminate a contract with employee because of incompetent service, unbecoming conduct, failure to comply with the School Laws of Texas and the Rules and Regulations of the Borger Independent School District, or conditions which may necessitate a reduction in personnel. The following is the proper procedure in the dismissal of a teacher:

"A. Teacher—Principal conferences where the principal shall indicate specific instances of ineffi-

ciency, infraction of good conduct, or regulations. These conferences shall be confirmed in writing. A copy shall be provided the teacher and the Superintendent, and one copy kept on file in the principal's office.

"B. The Superintendent, after a conference with the teacher and principal, may recommend the dismissal of the teacher to the Board of School Trustees. Copies of written reports of conferences shall go to the teacher, the principal, and one copy kept on file.

"C. The teacher has the right to be heard by the Board of Trustees."

Here it should be noted that it is a contention of the plaintiff that Rule 7.32 above sets forth the grounds upon which a superintendent would fail to recommend a teacher for renewal of his contract, but the defendants contend that this rule applies only to a termination of the contract during its stated term and the procedure for a dismissal prior to the end of such term, and that the procedures for non-renewal are exclusively set forth in Rule 7.06.

The evidence in this case shows that the number of teachers in the Borger system declined from 222 in 1965 to 185 in 1973, but other than Mr. Moore's non-renewal, there had been no forced resignations and the reduction had been accomplished through voluntary retirements and resignations. In 1973 a Mr. Clowe was asked to improve his performance and after a conference with his principal about ways to improve, he did voluntarily resign.

In fact the evidence indicates that with exceptions above noted the board of trustees never received a recommendation from the superintendent that a teacher's contract not be renewed and the board of trustees had never vetoed or turned down the recommendation of the superintendent.

Mr. Knowles testified that the school district maintained an affirmative program to keep and retain teachers and principals and that this was generally known throughout the school system. In fact the school district relied on teachers returning as it had no program of replacement for teachers.

As indicated in the above rules the teachers understood that, if they had not received a communication from the superintendent by March 1st of any year that they would not be recommended, they could rely on a renewal of their contract for another year. In Mr. Moore's case notice was given prior to March 1, 1970 that he would not be renewed.

For the first time in 1970–1971 a paragraph was typed in certain of the teachers' contracts in this school system that stated that it was for a one-year term only. Mr. Knowles testified that this was placed only in the new teachers' contracts and its purpose was to let the new teachers know that they could not expect a renewal if there was a decline in the number of teachers needed as preference would be given to the teachers who were senior in service.

The evidence in this case is further uncontested that the teachers in the Borger Independent School District, for at least the past 20 years, had always been tendered contract for one year only and the minutes of the board of trustees do not reflect that the Borger Independent School District ever adopted the provisions of the Texas Continuing Contract Law. (Texas Education Code, sec. 13.101 et seq., Vernon's Annotated Texas Statutes). Mr. Knowles also testified that the board of trustees had never adopted such law and that the school board made the policy for the district and set the term for the teachers' contracts.

To bolster the position of the defendants that the continuing contract law was not adopted, there was introduced into evidence Defendants' Exhibits 8 through 13 which were the superintendent's annual reports to the Texas Education Agency of this school district. In response to a question concerning the adoption of the Continuing Contract Law, the Borger Independent School District certified each year that it had not adopted same.

In the school year 1968–1969 and in years prior thereto the minutes of the board of trustees took positive action in the form of an election of the teachers recommended by the superintendent. Beginning in 1969–1970 and thereafter these minutes merely refer to Rule 7.-06(A) and stated that the teachers listed would be considered as recommended. However a former member of the school board testified on behalf of the plaintiff that the school board did take the formal action of electing the teachers in the three years that he was on the board—1969, 1970, 1971.

A former teacher in this system, Mr. Jackson, testified that in the early 1950s he had attended conferences with the then superintendent of the Borger schools who told him that the policy of the system regarding security of teachers was to get good teachers and "to hang onto them as long as they got the job done" and that they would continue to have a job under these conditions. A subsequent superintendent in 1955–1965, Dr. Little, never discussed this policy with him but Mr. Jackson further acknowledged that all teachers' contracts were in writing and that a teacher had to sign a contract each year and it was always for a one-year period.

Mrs. Mildred Hickox had taught in the Borger system for 22 years and related that her principal had told her at the time of the closing of one of the schools in Borger that those teachers in the school to be closed would be placed in other schools and given a job and that this was done and that it was her understanding that the Borger Independent School District had adopted the Continuing Contract Law. It was not clear

whether this understanding came from her principal or from meetings with various teachers' organizations to which she belonged. Mrs. Hickox did admit that the board of trustees had the ultimate authority to determine if a contract was to be renewed but that she felt that the board followed the superintendent's recommendations.

Likewise Mrs. Faye Graves, a teacher for 12 years in the Borger schools, stated that it was her understanding that Rules 7.06 and 7.32 had the effect of adopting the Continuing Contract Law as provided for by the Legislature but she acknowledged that the only information she received in this respect from the school district was when the principal simply read these two rules to them at a teachers' meeting and that the conclusions as to the adoption of the Continuing Contract Law are hers.

Mr. Wygle, a former member of the school board, took an active part in the functions of the board and became acquainted with many of the teachers and students in the system. He stated that it was his belief that the teachers understood that they could expect reemployment in the Borger Independent School District so long as they did not violate school policy and performed their jobs satisfactorily. It was his understanding as a member of this board that such job security was a policy of the school district and he determined this understanding by his knowledge of the longevity with which many of the teachers had served. However he testified that the board would vote each year on the list of teachers recommended by the superintendent and that they would either vote "yes" or "against" the list submitted and that every list was approved.

The plaintiff Moore testified that when he went to work in 1953 he talked with Mr. Cryer who was superintendent at that time, and after being approved by a principal of one of the schools in the district, was employed subject to the approval by the board. The superintendent told him that he hired teachers on probation for one or two years and after that they were considered as permanent employees and that it was Mr. Moore's understanding that this would apply to him. This statement was made in 1953 when he was first employed and the record indicates that he was continuously employed until he was suspended from his teaching duties in February, 1970.

During the last years of his employment, in about 1967 or 1968, Mr. Moore would have conferences with his principal, a Mr. Jones, and at one time he informed Mr. Jones that he wanted to teach three or four more years and that he and his wife intended to build a home on a farm they wanted to finish buying and that Mr. Jones assured him that "you don't have to worry about a job." Mr. Moore had been held up as an example to other teachers as an ideal teacher and on occasions he advised other teachers in the system. He had received the usual service pins for his years of service and had heard Mr. Jones discuss the 1968 policy manual on two different occasions in teachers' meetings.

Mr. Moore testified that it was his understanding that he would continue to be rehired automatically and that he figured that he would have a job until his retirement. On the other hand he knew that teachers were employed on a one-year contract on the recommendations of the superintendent and that it was an unwritten policy that the principals would also make their recommendations concerning teachers to the superintendent. He always read his contract before signing it, checked it over, and that each year that it had been for a one-year term only and that "the written contract is all that I ever had." Mr. Moore never discussed with Superintendent Knowles school policy in this respect or job security and he stated that neither Mr. Knowles or any member of the board of trustees ever indicated to Mr. Moore that there was any other contract or agreement other than the written contracts signed on a yearly basis.

This court's memorandum opinion of October 28, 1971 details the facts and circumstances of Mr. Moore's separation from his employment by the school district. He was suspended from his duties in the spring of 1970 after certain charges of misconduct against him had been made by some of his female students and, although the grand jury returned an indictment, he was paid his full salary for the 1969–70 school year. He was notified prior to March 1, 1970 that he would not be tendered a contract to teach for the next year. The failure to afford him minimal due process (in the form of a proper hearing) gives rise to the complaint in this case. [The remand to this court by the United States Court of Appeals for the Fifth Circuit was for the purpose of determining if Mr. Moore had been given a status sufficiently close to tenure that he would enjoy a "property" interest in future employment under the principles of Perry v. Sindermann, *supra*. If he had such a "property" interest the failure of the Board of Trustees to afford him the hearing required by the Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution of the United States would entitle him to recover his damages. However if Mr. Moore only had a subjective expectancy of renewal of his contract or of reemployment such expectancy would not give rise to any cause of action on behalf of Mr. Moore. Moore v. Knowles et al., *supra*.]

The Supreme Court in the majority opinion of Perry v. Sindermann, *supra*, at footnote 7 on page 602, held:

"For 'property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .' Board of Regents v. Roth, 408 U.S. 564, at 577, 92 S.Ct. 2701, at 2709, 33 L.Ed.2d 548 (1972). If it is the law of Texas that a teacher in the respondent's position had no contractual or other claim to job tenure, the respondent's claim would be defeated."

Chief Justice Burger in a concurring opinion stated on page 604:

"Thus, whether a particular teacher in a particular context has any right to such administrative hearing hinges on a question of state law."

This court must therefore determine if the applicable state statutes, as interpreted by the Texas state courts, the contract of employment itself, or the school policies and practices, or any of these, afford Mr. Moore more than a subjective expectancy of continuing employment beyond the one year term of his 1969–70 contract.

### The Texas Statutes

Sec. 21.201 et seq. of the Texas Education Code is the Texas statutory scheme for affording tenure or a continuing contract for teachers in independent school districts, such as the Borger Independent School District. This scheme is not mandatory but is strictly permissive and has so been interpreted by the Texas state courts. Hix v. Tuloso-Midway Independent School District, Tex.Civ.App., 489 S.W.2d 706 (1973), ref. n. r. e.

This continuing contract law has not been adopted by the Borger Independent School District and accordingly the plaintiff has no "property" interest or tenure of any nature that would be possessed by him because of such statutes.

### The 1969–70 Contract of Employment

Neither does Mr. Moore's contract for the 1969–70 school year create any "property" interest in his behalf. Not only did the superintendent testify that the written contract (Pltf.'s Ex. No. 23) was the only contract or agreement that the school district had with Mr. Moore, but the plaintiff so testified himself.

This contract includes the following provision:

"It is further agreed that no verbal agreement entered into between the Parties hereto not covered by this contract, and no written agreement, aside from this contract, shall become a part of this contract or bind either of the Parties to the same. Any contingencies regarding this contract are to be written on the reverse side hereof and initialed by both Parties hereto, and shall become a binding part hereof, the same as though originally agreed upon."

This provision, as well as the testimony of the parties, proves conclusively that there was no contractual obligation on the part of the school district to offer continued employment to Mr. Moore and no "property" interest is created because of this or any other contract or agreement between the parties.

*The School Policies and Practices:*

Having determined above that Mr. Moore has no "property" interest because of the Texas Statutes or by virtue of his contract with the school district, attention must be focused on the policies and practices of the school district.

The policies are found first in the Manual of Policies and Administrative Procedures of the school district. (Pltf.'s Ex. No. 4). Rule 7.06 explicitly states that the Board employs teachers on a one-year contract basis. (Pp. 44–45, Pltf.'s Ex. No. 4).

■ Rule 7.32 affords no comfort to plaintiff. Although many of the teachers and even the superintendent had the mistaken understanding that Rule 7.32 set forth the grounds for not renewing a teacher's contract for the next year, such is not a proper reading or application of this rule. It is concluded by this court that Rule 7.32 is solely for the purpose of stating the grounds for the termination or cancellation of a teacher's contract before the expiration of its term and is not to be interpreted or applied so as to show an adoption of the Texas Continuing Contract Law or to set forth requirements for refusal to renew a teacher's contract for an additional year or years. The proper interpretation of these written policies can only lead to the conclusion that it was intended by the Board, in adopting the written policies, to enter into contracts for only one year, and that the school district and Board reserved the right to renew or not renew same for additional school years, and that such refusal could be with or without cause and would not be governed by Rule 7.32.

■ But aside from these written policies, the plaintiff does claim that the practices of all concerned for at least the past 20 years indicate a *de facto* tenure policy that would give him a "property" interest. As stated above, the plaintiff himself had been employed from year to year for many years without question and the record does not show that any teacher had been forced to resign and that the school board consistently and without exception accepted the superintendent's recommendations in renewing the contracts each year. No doubt the school district and the administration desired to have stable employment throughout the school system and the teachers were encouraged to continue their employment. Mr. Moore had been told when he was first employed and on one or two occasions thereafter that he would have a job so long as he performed satisfactorily and he felt that he had been promised a job until his retirement date. However, these statements were not made by the Board of Trustees or by any authority of the Board of Trustees but rather from a superintendent who had hired him more than 15 years ago and by one or two principals in the system since that date. Such statements are not sufficient to bind the school district to a contract for future employment with Mr. Moore.

Hix v. Tuloso-Midway Independent School District, *supra,* is also controlling

here. As the United States Supreme Court stated in Perry v. Sindermann, *supra*, that if it is the law of Texas that a teacher in the respondent's position had no contractual or other claim to job tenure, the respondent's claim would be defeated. As far as can be determined by research, Hix is the controlling state law to the facts in this case, and there the Court stated:

"Successive renewals of a teacher's contract with admissions by school representatives that such renewals were the reward for satisfactory work does not constitute evidence of de facto tenure policy of the school district, or of any implied agreement on the part of the school district that a teacher has a contractual right of renewal so long as the work performed is satisfactory."

Further, the *Hix* Court held:

"The tenure policy of the School District that plaintiff says was in effect, be it express, *de facto* or implied, would be contra to Article 2781, and void, as it would have generated an automatic teacher contract renewal procedure, the effect of which would have resulted in a term that was not limited by three years but by the failure of the teacher to render satisfactory service."

■ Here, as in the *Hix* case, this court finds that there is no evidence that has been presented that the plaintiff and the Board of Trustees impliedly agreed or had a mutually explicit understanding that plaintiff's last contract would be renewed upon expiration thereof.

■ In this case the State of Texas' Statutes provide a specific method for establishing tenure or continuing contract, which was not adopted by the school district at Borger, and the contract involved here is one expressly limited to a one-year term, and the written policies of the Board, of which the plaintiff was well aware, provide that only one year contracts will be given, all point to and add up to the fact that there were no facts in this case upon which the Texas state law could afford a protectable interest to Mr. Moore. The oral representations of some of the administrative personnel to the effect that he would be given employment so long as his work was satisfactory are not sufficient to overcome the law, the contract, and the written policies of the Board and the court here holds that the school policies and practices of the Borger Independent School District were not such as to afford Mr. Moore any *de facto* tenure or any other protectable "property" interest under the principles of *Sindermann, supra.*

The plaintiff has cited and would urge the court to follow Zimmerer v. Spencer, Individually, etc., and San Jacinto Junior College District et al., 485 F.2d 176 (5th Cir. 1973). There are differences however in that *Zimmerer* involved a junior college in the State of Texas which was not governed by the Texas Continuing Contract or tenure Law. Unlike the case *sub judice*, the San Jacinto Junior College had a written policy and a section therein titled "Tenure" which stated that "tenure is expected to be stable," while here the written policies of the independent school district expressly stated that contracts would be for a one year term. These two differences, the lack of a statute governing junior colleges as was provided for in the operation of independent school districts, and the differences in the written policies of the two institutions distinguish *Zimmerer* from Mr. Moore's case.

■ Accordingly, the court is of the opinion that H. L. Moore does not have any "property interest" to a continued employment by the Borger Independent School District, and even though he was denied procedural due process, he cannot recover in this case. Perry v. Sindermann, *supra.*

Accordingly judgment will be entered for and on behalf of the defendants.