**Wayne WOODWARD, Plaintiff,**

v.

**The HEREFORD INDEPENDENT SCHOOL DISTRICT et al., Defendants.**

**Civ. A. No. CA–2–75–111.**

United States District Court, N. D. Texas, Amarillo Division.

Oct. 12, 1976.

Robin M. Green, Amarillo, Tex., Thomas J. Griffith, Lubbock, Tex., for plaintiff.

Earnest L. Langley, Witherspoon, Aikin & Langley, Richard E. Green, Hereford, Tex., for defendants.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The above case came on to be tried in Amarillo, Texas on September 21, 1976 before the court without a jury, with all parties and their attorneys present and announcing ready for trial. After hearing and considering the evidence (the court realizes that in the depositions some of the testimony is hearsay and thus has disregarded same), the pleadings, and the arguments and briefs of counsel, the court files this memorandum opinion which shall constitute the court's findings of fact and conclusions of law.

Plaintiff, formerly a teacher of English in the seventh and ninth grades in the Hereford Independent School District, files his complaint against The Hereford Independent School District, its principal, superintendent, and members of the school board for said school district. Plaintiff alleges a cause of action arising under 42 U.S.C. § 1983, and also claims damages under the First and Fourteenth Amendments to the Constitution of the United States arising from the set of facts herein found.

This court has jurisdiction of the individuals named as defendants in the suit and of the cause of action alleged against the individuals under 42 U.S.C. § 1983 and pursuant to 28 U.S.C. § 1343. This court has no jurisdiction over The Hereford Independent School District for any cause of action arising under 42 U.S.C. § 1983 as the school district is not a "person" within the meaning of this statute, *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), but the cause of action based upon the alleged deprivation by all defendants of plaintiff's rights under the First and Fourteenth Amendments to the Constitution of the United States is properly brought in this court, and this court has jurisdiction pursuant to 28 U.S.C. § 1331(a). The plaintiff has alleged damages in excess of $10,000.00, and the court here finds that the relief hereinafter awarded to plaintiff is of a value in excess of $10,000.00 exclusive of interest and costs.

Plaintiff, pursuant to six written contracts (Defts. Exs. 14 through 19), had been employed by The Hereford Independent School District as a teacher in the La Plata Junior High School in Hereford, Texas, and taught English in the seventh and ninth grades. The contracts covered a one-year period only and the last one covered the school year of 1974–75.

In March of 1975, the superintendent presented to the school board for this school district his recommendations and proposals for renewal of the teachers' contracts in the entire school system, totaling 350 to 360 teachers. The plaintiff's name was not among those recommended for renewal, and he was not awarded a contract for the 1975–76 school year.

Pursuant to a request from the plaintiff's attorney, a hearing was afforded the plaintiff before the entire school board on June 2, 1975, and a transcript of this hearing is shown by Plaintiff's Exhibit One in this case. After the hearing, the board did not tender a contract to Mr. Woodward and he has not taught in The Hereford Independent School District since the end of the 1974–75 school term.

The evidence further shows that in the early part of 1975, Mr. Woodward, plaintiff herein, was elected as a vice president of the Hereford chapter of the American Civil Liberties Union (ACLU), and publicity of his election to this office was given in the local news media. In early February of 1975, one of Mr. Woodward's students, Pam Whitley, requested of Mr. Woodward, between classes, that she be given some material and an application blank for her membership in the local chapter of the ACLU. He complied with this request, but the court does not find that the plaintiff distributed any materials concerning the ACLU during classroom periods, but there is indication that the history and purposes of the ACLU were discussed during classroom sessions. There is no evidence that his actions in this regard were disruptive of any of the school processes, and the court finds that nothing unusual occurred because of Mr. Woodward's activities in connection with the ACLU and his school functions, except that his contract was not renewed.

On February 12, 1975, Plaintiff's Exhibit Two, the principal of this junior high school wrote a letter to the superintendent of schools, Mr. Hartman, informing him that he was considering the plaintiff to be on a probationary status, and that he would not recommend that Mr. Woodward's contract be renewed until such time that he proved that he was supporting school policies and using material in his room which had been approved by the proper personnel prior to their use. Mr. Hughes, the principal, stated in his letter that the plaintiff expressed a hostile attitude toward efforts of the school

administration to carry out board policy by his attitude and refusal to accept decisions by his superiors.

Under questioning the principal, Mr. Hughes, was unable to factually state what materials referred to in his letter of February 12th had been distributed against his directives except the ACLU materials above referred to. The evidence reveals no written policy or directive from the school administration to the teachers requiring prior clearance of materials to be used, and Mr. Hughes was unable to state that he had definitely and specifically directed Mr. Woodward that he wanted any such materials to be cleared by him before their use. Mr. Hughes desired such clearance so that he could anticipate any problems that might arise and be in a position to defend his teachers should criticism of them be made. In any event the plaintiff did not advise any of the school administrative personnel that he intended to make any use of the materials in question, including the distribution of ACLU material between classes, and the court is unable to find that school policies required such clearance. The evidence does not prove or show that Mr. Woodward ever distributed in the classroom any objectionable materials, and the ACLU material referred to above was given by plaintiff to a student between classes. Further the proof does not show that plaintiff ever disobeyed any orders from his principal that had any relation to the subject matter of this case.

Mr. Hughes, in his testimony, insisted that his letter to Mr. Hartman and his failure to recommend Mr. Woodward for renewal did not arise from the ACLU incident, but that it was only one of many other factors that he took into consideration. However, Mr. Hughes was unable to point out explicitly what other factors he was referring to, although some mention was made of communication difficulties. These latter difficulties arose only after the February 12, 1975 letter.

The evidence in this case further showed that Mr. Woodward was considered outstanding in several categories, satisfactory in many more, but his principal found that he needed improvement in four other categories. The evidence further shows that at least one of his fellow teachers considered him to be well qualified for the position he held and for his teaching ability.

Mr. Hughes testified, and the court finds, that prior to February 12, 1975, the date of the letter from the principal to the superintendent, the relations between Mr. Woodward and the administration were good, that communication lines were open, but that it changed rather suddenly when Mr. Hughes gave to the plaintiff a copy of his letter to Mr. Hartman.

■ The court finds that Mr. Hughes' action in placing Mr. Woodward on probation and in failing to recommend him for renewal resulted from Mr. Woodward's actions in distributing certain ACLU material, as above outlined, and his participation in ACLU activities. Although there may have been other factors, the evidence does not show exactly what these factors may have been, and the evidence is vague and indefinite on this point. If it had not been for Mr. Woodward's ACLU activities, the court is convinced that his contract would have been renewed.

Although not determinative of the issues in this case, the evidence did show that another teacher in the system had similar activities in the ACLU and was placed on probation, but that he subsequently resigned his ACLU membership and his contract with the school was renewed. Also, in April of 1975, after the above events, the school board gave permission to the ACLU to conduct an essay contest in the school system, but this was done after the school superintendent failed to include Mr. Woodward's name on the list of teachers, and after Mr. Woodward had hired an attorney to represent him.

At the commencement of the school board hearing on June 2, 1975, Mr. Woodward was afforded the choice of an executive session or an open meeting, and through his attorney he indicated that he wished the hearing to be open to the public, and it was so held. Mr. Woodward was

accompanied by his attorney on this occasion, but it did not result in any change in the school board's actions with respect to him. No witnesses testified at the hearing.

After he failed to gain reemployment for the 1975–76 school year, Mr. Woodward sent out applications to many other school districts, but was unsuccessful in getting another teaching position. At least one of the districts to which he applied indicated that they were aware of Woodward's troubles with the Hereford school district. However, the court finds that none of the defendants in any way did anything to publicize or disseminate any information concerning Mr. Woodward or his ACLU activities or his problems with the Hereford school district, and that whatever was known about the facts was a result of the open hearing and publicity from other sources than from any of the defendants, either directly or indirectly.

In a telephone conversation between Mr. Hughes, the principal and the Director of Counselor Education at Southwestern State University in Oklahoma, Mr. Hughes informed this director of the plaintiff's ACLU activities. This was after Mr. Woodward had failed to get his contract renewed by the Board in March, 1975 and apparently was not in connection with any employment sought by him as a teacher. This conversation does indicate, however, the importance attached by the principal to Mr. Woodward's ACLU activities.

█ To recover in this case for a deprivation of procedural due process, the plaintiff must show that he possessed an interest in "property" and that the defendants deprived him of such or that he was deprived of a "liberty" interest resulting from the actions of defendants.

██ The Hereford Independent School District has not adopted the continuing contract law of the State of Texas, Texas Education Code, §§ 13.101 et seq., and the plaintiff had no tenure in fact or in law. His contract expired in August of 1975 and none of his previous contracts or agreements with the school system gave him a right to further renewal of his employment. Thus, he had a "mere expectancy" of employment. *Bradford v. Tarrant County Junior College District,* 492 F.2d 133, 135 (5th Cir. 1974). Under previous decisions in both state and federal courts, it is clear that the plaintiff has not been deprived of or denied any interest in property. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Moore v. Knowles,* 377 F.Supp. 302 (N.D.Tex.1974), aff'd per curiam, 512 F.2d 72 (5th Cir. 1975); *Hix v. Tuloso-Midway Independent School District,* 489 S.W.2d 706 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd); see also *Bishop v. Wood et al.,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

Further, the facts do not prove or show that the defendants have in any way damaged or harmed the reputation of the plaintiff, nor has a "stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities" been imposed. *Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707.

█ Recovery cannot therefore be attained by the plaintiff on either of the above two grounds. Since the plaintiff has no right to a hearing, the adequacy of the hearing gratuitously granted by defendants is not open to review. *Lewis v. Spencer,* 468 F.2d 553, 557 n. 3 (5th Cir. 1972).

Plaintiff has asserted, although apparently not strongly urged, that he should be allowed recovery because the school board did not follow its own policies. The evidence, however, has failed to prove this theory of plaintiff's case, and the court does not find that the board violated any of its own policies in regard to Mr. Woodward's nonrenewal. Rather, the board operated in the accustomed manner. That is, the principals developed the approval lists and presented them to the superintendent who gave them to the board. The board merely accepted the principals' determinations.

The more serious ground for recovery in this case is the plaintiff's allegations that his contract was not renewed because of his

activities with the ACLU, and that plaintiff's activities and expressions were protected by the First and Fourteenth Amendments to the Constitution of the United States. The court is compelled by the state of the record in this case to find that his contract was not renewed because of his association with, his activities in, and his expressions concerning the American Civil Liberties Union. Absolutely no evidence has been introduced to show that Mr. Woodward's activities in this regard had any disruptive effect upon the orderly operation of the school district, or that it in any way interfered with the educational processes, nor was it proven that in such activities he was acting contrary to orders or directives from his superiors. In balancing the competing interests, plaintiff's clearly preponderate.

■ The court concludes that since Mr. Woodward's contract was not renewed because of his activities that were protected by the First and Fourteenth Amendments, he is entitled to relief from this court. *Perry v. Sindermann, supra; Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Sterzing v. Fort Bend Independent School District et al.,* 496 F.2d 92 (5th Cir. 1974), 376 F.Supp. 657 (S.D.Tex.1972); *Bradford v. Tarrant County Junior College, supra.*

■ The remedy in behalf of the plaintiff in this case is reinstatement as suggested in *Sterzing v. Fort Bend Independent School District et al., supra,* and approved by *Bradford v. Tarrant County Junior College, supra.* The court realizes that this is not the only form of damages that could be awarded, but the court believes it to be the proper remedy in this case. The court is also of the opinion that plaintiff should recover a reasonable attorney's fee, and that the sum of $6,000.00 as attorney's fees is a reasonable fee for services in the District Court, and should be paid by The Hereford Independent School District to the attorneys for the plaintiff. This award of fees is based upon the finding that the defendants actions were unreasonable and obdur tely obstinate. *Jinks v. Mays,* 464 F.2d 1223, 1228

(5th Cir. 1972). *See Berkshire Mutual Insurance Company v. Moffett,* 378 F.2d 1007 (5th Cir. 1967).

Therefore, it is ordered that the attorneys for the plaintiff submit a proposed judgment to the court ordering the payment of the above attorney's fees, ordering that the defendants reinstate the plaintiff in his position as a teacher of English in the seventh and ninth grades of The Hereford Independent School District, or some similar position, within thirty days after this judgment becomes final, and that such reinstatement be effective as of the beginning of the school year of 1975–76. This will necessitate the payment to the plaintiff by the School District of the salary that he would have otherwise received up until the time that he is actually reinstated in his position as a teacher. The plaintiff has proven his entitlement to back pay which is an element of reinstatement. *Jinks v. Mays, supra.* It is further ordered that none of the plaintiff's rights or benefits will be altered but will remain the same as if his contract had been renewed at the termination of the 1974–75 school year.

■ The record in this case does not authorize the reduction of the back pay awarded to plaintiff because of the failure of plaintiff to mitigate his damages. Such failure has not been proven and the responsibility is upon the defendants to bear the burden of such proof. *Rolfe v. County Board of Education of Lincoln County, Tennessee,* 391 F.2d 77, 81 (6th Cir. 1968). Further, it appears to the court that plaintiff has attempted in a proper manner to mitigate his damages but was unsuccessful in doing so.

All relief not herein ordered will be denied, and all costs will be taxed as against the defendants.

The Clerk will furnish a copy hereof to each attorney.