**W. R. SILER, Plaintiff-Appellant,**

v.

**BRADY INDEPENDENT SCHOOL DISTRICT et al., Defendants-Appellees.**

No. 75–2634.

United States Court of Appeals, Fifth Circuit.

May 31, 1977.

Larry Watts, Houston, Tex., Bob Gibbins, Austin, Tex., for plaintiff-appellant.

Emerson Banack, Jr., William T. Armstrong, III, San Antonio, Tex., for defendants-appellees.

Before GODBOLD, TJOFLAT and HILL, Circuit Judges.

GODBOLD, Circuit Judge:

This is a teacher nonrenewal case. Plaintiff Siler claims that he had de facto or constructive tenure which, under *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), was a protectible property interest that entitled him to an administrative hearing meeting rudimentary standards of due process before the school board could decide not to renew his contract. The district court held that he did not have a property interest within the meaning of *Roth* and *Sindermann*. We agree.

Siler was employed by the Melvin District at the commencement of the spring semester of the 1969–70 school year, and, under one-year contracts, for the years 1970–71 and 1971–72. In August 1971 Melvin District was annexed by the Brady District. With respect to the merger the Brady Board adopted a resolution addressed to the Melvin Board, which was given currency in the local newspaper. It stated:

> We would consider ourselves bound by the terms of your classroom teachers' contracts and such teachers would be assigned teaching duties in the Brady school system commensurate with the orderly placement of personnel by the school administrators. At contract renewal time, these teachers would be considered upon merit in exactly the same manner as is now in effect in our system for consideration of our present teachers.

Under the written policies and regulations of the Brady District, the superintendent recommended employment and dismissal of teachers, and the Board made decisions on appointment or reappointment after considering the superintendent's recommendation.

In the district court hearing, the superintendent described the employment relationship in the Brady system in this way:

The teachers, I think, had the confidence in me that they would have a job or have my recommendation if they followed the policies of the school district and did a good teaching job.

He explained that the district's policy was to base renewal on quality of performance in the preceding year, that he would not recommend nonrenewal without cause and that a teacher in the district knew he had a job as long as he did a good job. He considered that he had to have substantial cause, as opposed to frivolous or insubstantial cause, for a recommendation of nonrenewal. These policies he considered to apply equally to former Melvin teachers.

Members of the Board acknowledged that teachers would expect to be re-elected annually if they did a good job, and that teachers were encouraged to and did feel secure in their employment.

A teacher initially employed in the Brady District for 1971–72 testified that as a result of a faculty orientation meeting conducted by the superintendent and other school officials he understood that "provided . . . we do a good job and do what is expected of us in terms of our assignments, then . . . we would maintain our job."

Siler signed no written contract with the Brady District for 1971–72. Rather Brady simply took over his Melvin contract. Commencing at the very beginning of the ensuing year, and continuing throughout the year, Siler had a continuing series of difficulties with the principal of the school to which he was assigned. In March 1972 the principal did not recommend Siler's reemployment for another one-year period, and at a regular Board meeting, the Board, in closed-executive session, approved the nonrenewal of appellant. Siler learned from the principal that he had not been recommended and asked to appear before a formal meeting of the Board, and he was permitted to do so. After the meeting the Board denied Siler's "request for reconsideration" of the nonrenewal of his contract, and in a letter to the appellant cited a lengthy list of deficiencies in his performance as the reasons for its action. In the district court the Board acknowledged that its procedures relating to this meeting did not comply with due process, but despite this concession the district court held that due process was satisfied. It is not necessary for us to reach this issue.

■ A terminated or nonrenewed public employee is entitled to the Fourteenth Amendment's procedural safeguards only if his termination or nonrenewal is a deprivation of liberty or property interests. *Board of Regents v. Roth, supra*, 408 U.S. at 571–72, 92 S.Ct. at 2705–06, 33 L.Ed.2d at 557–58. In the case at bar, appellant has made no claim that he has been deprived of any liberty interest but maintains that he has been deprived of a property interest—the "right" to have his contract renewed unless good cause is shown for a nonrenewal. Reduced to its essentials, plaintiff's position is that the Brady system's policy that teachers could expect to be rehired if they satisfactorily performed their jobs created de facto tenure, or a common law of the system—in either event a "property interest"—requiring the Board to conduct a hearing before it could reach a decision based on grounds of unsatisfactory job performance, not to reemploy a teacher after his first year of employment.

■ As the Supreme Court recently emphasized in its decision in *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), property interests are created by state law, and a court in reviewing whether an individual has been deprived of a property interest must first look to state law to determine if there exists an actual underlying property interest. As Justice Stevens wrote in that case,

A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law.

426 U.S. at 344, 96 S.Ct. at 2077, 48 L.Ed.2d at 690. Following the teachings of *Bishop v. Wood*, we must first examine Texas law to see if it grants to Siler a protectible property interest.[1] We find that it does not.

The leading Texas case on de facto tenure is *Hix v. Tuloso-Midway Independent School District*, 489 S.W.2d 706 (Tex.Civ. App.1972), *writ ref'd* n. r. e. In that case one of the challenges mounted by a teacher against the School Board's refusal to renew his contract was that the actions of the Board were in violation of a de factor tenure policy followed by the district. As evidence of the de facto tenure policy the plaintiff (a teacher who had been employed continuously by the district for seven years) pointed to the Board's unwritten policy of renewing contracts as a reward for satisfactory work and to a statement by the Board's attorney confirming the existence of the aforementioned policy. The Court of Civil Appeals of Texas rejected the plaintiff's position. In doing so the court wrote:

> The attorney for the School District, in a letter, dated May 2, 1968, addressed to the State Commissioner of Education, stated: "The policy then and now is to reward satisfactory work by extending their (teachers') contracts, but this has been done by action of the Board each March". Plaintiff says that this statement is proof of a *de facto* tenure policy that clearly implies promise of continued employment. We do not agree. The published school board Policies in effect at all times pertinent to this appeal never expressed anything indicating that it would renew any teacher contract when it expired. . . . The mere fact that a teacher has been rehired each year for a period of years does not constitute any evidence that the School District had impliedly contracted with the teacher to renew the contract every year. Successive renewals of a teacher's contract with ad-

missions by school representatives that such renewals were the reward for satisfactory work does not constitute evidence of *de facto* tenure policy of the school district, or of any implied agreement on the part of the school district that a teacher has a contractual right of renewal so long as the work performed is satisfactory.

> \* \* \* \* \* \*

> The tenure policy of the School District that plaintiff says was in effect, be it express, *de facto* or implied, would be contrary to Article 2781, and void, as it would have generated an automatic teacher contract renewal procedure, the effect of which would have resulted in a term that was not limited by three years but by the failure of the teacher to render satisfactory service.

489 S.W.2d at 710.

In *Moore v. Knowles*, 377 F.Supp. 302 (N.D.Tex.1974), *aff'd*, 512 F.2d 72 (CA5, 1975), the court followed *Hix* in holding that a teacher who had taught in a school system for 16 years did not have de facto tenure even though there was testimony by the plaintiff, present and former teachers, and a former school board member that the policy of the School Board was to continue teachers' contracts so long as "they did not violate school policy and performed their jobs satisfactorily." 377 F.Supp. at 305–06. The parallel between the facts in *Hix* and *Moore* and the facts in the case at bar is striking. Taken together, *Hix* and *Moore* establish that under the facts of this case the type of tenure whose protection Siler claims simply does not exist as a matter of Texas law. Therefore, Siler has no protectible property interest.

Even if Texas law on de facto tenure were not clear, we still would be hesitant to sustain the appellant's claim. Arguably a teacher reemployed for a number of successive one-year terms may establish "good

---

1. The recent decision in *Stapp v. Avoyelles Parish School Bd.*, 545 F.2d 527 (CA5, 1977), is not to the contrary. While the majority in *Stapp* did not emphasize the mandate of *Bishop v. Wood* that state law be examined to determine the existence of a property interest, it did make clear that its reading of Louisiana law did not preclude the conclusion that the plaintiff/appellant in *Stapp* had a protectible property interest. 545 F.2d at 533 n. 15.

job" performance and acquire de facto tenure against nonrenewal on the ground of unsatisfactory job performance. But Siler had not had successive renewals, or even one renewal. His difficulties over job performance began as soon as his contract began and continued until March when the nonrenewal decision was made. In short, a recommending superintendent and an employing board are entitled to a reasonable period of time in which to ascertain and establish whether a teacher is doing a "good job" before the teacher can claim constructive tenure or "common law of the system" status as a satisfactory performer.[2]

In summary, we hold that under Texas law the appellant, Siler, did not have a protectible property interest. Therefore, we do not reach whether the procedures afforded him comported with due process.

AFFIRMED.

---

2. Even the pre-*Bishop v. Wood* cases do not go as far as Siler would have us go. For example, in *Zimmerer v. Spencer*, 485 F.2d 176 (CA5, 1973), we affirmed a district court finding that a junior college teacher had a protectible property interest. The college had no explicit tenure system. The teacher had been employed for six years, under successive one-year contracts, had been chairman of her department for five years, and was the senior member of the psychology department. The faculty handbook contained a section entitled "Tenure" which stated "Tenure is expected to be stable." Under established procedures if the college decided a contract was not to be renewed the teacher was placed on probation to give him an opportunity to correct his deficiency. These circumstances are a far cry from the system in effect in the Brady District.

In *Perry v. Sindermann* itself the facts which the court held might prove the existence of a de facto tenure policy were vastly more convincing than the facts in the case at bar. The teacher in *Sindermann* had been employed in the state college system of the State of Texas for 10 years, including a period of service as chairman of his department. Both the faculty guide of the college which refused to renew his contract and the guidelines issued by the Coordinating Board of the Texas College and University coordinating system explicitly provided for some form of job tenure, or its equivalent. 408 U.S. at 600, 92 S.Ct. at 2699, 33 L.Ed.2d at 570. The contrast between the claim of Sindermann and Siler's claim could hardly be more pronounced for Siler was in his first year with the Brady System (after a year and a half in the Melvin System) and was relying on an unarticulated, and in comparison to the explicit provisions in *Sindermann*, vague belief that he would be rehired.