**Gary GROUNDS, Petitioner,**

v.

**TOLAR INDEPENDENT SCHOOL DISTRICT, Respondent.**

No. D–2168.

Supreme Court of Texas.

June 23, 1993.

Jefferson K. Brim, III, Austin, for petitioner.

Andrew Ottaway, Granbury, for respondent.

**OPINION**

CORNYN, Justice.

In this case we consider whether the legislature conferred upon public-school teachers in Texas a constitutionally protected property interest [1] by virtue of the Term Contract Nonrenewal Act (TCNA). TEX. EDUC.CODE §§ 21–201–.211. For the reasons set out below, we hold that the legislature did grant teachers a property interest. We, therefore, reverse the court of appeals' judgment and remand this cause to that court for consideration of points of error relating to damages and attorney's fees not previously addressed.

I.

Petitioner, Gary Grounds, was a teacher and a coach for the Tolar Independent School District (the District) during the 1983–84 school year. In February of 1984, the District notified Grounds that his one-year teaching contract would not be renewed. Grounds' requests for an explanation of the nonrenewal and for a hearing were denied. Grounds appealed to the Commissioner of Education (the Commissioner) who ordered the District to renew Grounds' contract for the 1984–85 school year.

The District declined to either abide by or appeal the Commissioner's order. Grounds then sued the District, alleging both breach of his employment contract and violation of his right to procedural due process. Grounds claimed that the due process violation arose not from the District's failure to renew his 1983–84 contract, but solely from its refusal to provide him with its reasons for nonrenewal of his contract and a hearing. The parties even-

---

1. Grounds makes only a passing reference to the Texas Constitution in a point of error, and did not brief or argue the subject. Therefore, we limit our opinion to his claim under the Fourteenth Amendment to the United States Constitution.

tually settled the contract claim, expressly reserving the due process claim for judicial determination, including Grounds' request for damages and attorneys' fees.

After a bench trial, the district court concluded that even if Grounds established a due process violation, he sustained no damages as a result. The trial court, accordingly, rendered judgment that Grounds take nothing. The court of appeals affirmed the trial court's judgment but did so because it concluded that the TCNA does not create a property interest in term-contract renewal, 827 S.W.2d 10. As a result, the appellate court did not reach Grounds' complaint that the trial court's failure to award damages and attorney's fees was against the great weight and preponderance of the evidence.

## II.

Texas public-school teachers are ordinarily employed under annual contracts. Before the TCNA was enacted, a school district could choose not to renew a teacher's term contract without providing any reason. *See Hix v. Tuloso–Midway Indep. Sch. Dist.*, 489 S.W.2d 706 (Tex.Civ.App.— Corpus Christi 1972, writ ref'd n.r.e.). Teachers serving under term contracts had no property interest in renewal. *Id.* As the court of appeals in *Hix* explained, a teacher enjoyed no such interest because "there was no statute, administrative rule or Texas decision that required the Board of Trustees [of the school district] to give plaintiff a hearing on the cause of nonrenewal of his contract." *Id.* at 711. Contract renewal decisions were left to the unfettered discretion of school districts.

The legislature altered this situation, however, with the enactment of the TCNA in 1981. The TCNA provides for automatic renewal of a teacher's term contract unless the district complies with certain statutory prerequisites. Tex.Educ.Code §§ 21.201– .211. Those prerequisites include providing the teacher with notice of preestablished reasons for nonrenewal and a hearing. *Id.*

■ It is constitutionally significant that the TCNA requires preestablished reasons for nonrenewal of teaching contracts in addition to notice and a hearing. Some substantive limit on the State's discretion is an essential characteristic of a property interest warranting constitutional protection. *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir.) *cert. denied*, 493 U.S. 992, 110 S.Ct. 540, 107 L.Ed.2d 537 (1989). The United States Supreme Court defined a constitutionally protected property interest in *Logan v. Zimmerman Brush Co.* as "an individual entitlement grounded in state law, which cannot be removed except 'for cause'." 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11–12, 98 S.Ct. 1554, 1561–62, 56 L.Ed.2d 30 (1978)) (other citations omitted). The "for cause" requirement discussed in *Logan* constitutes a substantive limit on the State's discretion creating a property interest. Likewise, the TCNA requirement of preestablished reasons for nonrenewal constitutes a substantive limit on the State's discretion creating a property interest.

Although school-district trustees initially adopt the reasons to decline to renew teachers' term contracts, the TCNA constrains school districts by requiring that those reasons be preestablished as part of a district's official policies. The TCNA provides that "[t]he board of trustees of each school district shall establish policies consistent with this subchapter which shall establish reasons for nonrenewal." Tex. Educ.Code § 21.203(b). Thus, a decision not to renew a particular teacher's contract is not entirely discretionary, but rather must be predicated on one or more previously established reasons. A decision not predicated on one of the district's preestablished reasons is ineffectual, and the teacher's contract is renewed by operation of law. *See id.* at § 21.204(b). Thus, in *Seifert v. Lingleville Independent School District*, we held that a teacher's contract was renewed by operation of law when the justification given by the school district for nonrenewal was not among its preestablished reasons. 692 S.W.2d 461 (Tex.1985).

The requirement of preestablished reasons for nonrenewal found in the TCNA is just the type of restraint on State discre-

tion the federal courts have recognized as providing a property interest. For instance, in *Cleveland Board of Education v. Loudermill*, the United States Supreme Court held that an Ohio statute provided a constitutionally protected property interest in continued employment because discharge of civil servants was permissible only for the reasons listed in the statute. 470 U.S. 532, 539 n. 4, 105 S.Ct. 1487, 1491 n. 4, 84 L.Ed.2d 494 (1985). Similarly, in *Sanchez v. City of Santa Ana*, the Ninth Circuit addressed a city charter provision and noted that "by providing that an employee may be demoted for certain specified reasons, [the provision] implicitly restricted the City's authority to demote an employee to the specified reasons." 915 F.2d 424, 429 (9th Cir.1990) *cert. denied*, —— U.S. ——, 112 S.Ct. 66, 116 L.Ed.2d 41 (1991). Thus, the court held that Sanchez enjoyed a constitutionally protected property interest. *Id.; see also Gorman v. Robinson*, 977 F.2d 350, 357 (7th Cir.1992) (recognizing property interest because housing authority policy allowed dismissal only for just cause); *Linton v. Frederick County Bd. of County Comm'rs*, 964 F.2d 1436, 1438–39 (4th Cir. 1992) (recognizing property interest because employees could be dismissed only for cause as specified in county personnel rules); *Moffit v. Town of Brookfield*, 950 F.2d 880, 885 (2nd Cir.1991) (recognizing property interest because collective bargaining agreement between town and police allowed dismissals only for just cause); *Richardson v. Felix*, 856 F.2d 505, 509 (3d Cir.1988) (recognizing property interest because statute allowed dismissal, demotion, or suspension only for cause); *Nicholson v. Gant*, 816 F.2d 591, 597 (11th Cir.1987) (per curiam) (recognizing property interest because county commission policies required notice of reasons prior to dismissal of employees); *Schaper v. City of Huntsville*, 813 F.2d 709, 713–14 (5th Cir.1987) (recognizing property interest because police captain could only be dismissed for just cause); *Skeets v. Johnson*, 805 F.2d 767, 772 (8th Cir.1986) (recognizing property interest because statute provided for merit review and personnel manual stated reasons for

termination); *Findeisen v. North East Indep. Sch. Dist.*, 749 F.2d 234, 237 (5th Cir.1984) *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985) (recognizing property interest because teacher could be discharged only "for lawful cause" or "because of necessary reduction of personnel"). The fact that the State retains some discretion in its decisions does not preclude the existence of a property interest. The Supreme Court determined in *Loudermill* that the statute at issue provided a property interest in continued employment, even though the broad categories of reasons for dismissal listed in the statute compelled subjective decision making. 470 U.S. 532, 539 n. 4, 105 S.Ct. 1487, 1491 n. 4, 84 L.Ed.2d 494 (1985). Specifically, under the statute, civil servants could be dismissed only for the reasons of: "incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office." *Id.; see also Cummings v. South Portland Housing Auth.*, 985 F.2d 1, 3 (1st Cir.1993) (recognizing property interest because housing authority manual stated that all actions affecting employees would be based solely on "merit" and permitted dismissal only for "unsatisfactory performance" or a "substantial violation" of regulations).

Nor does the fact that the reasons for nonrenewal are not listed in the TCNA itself, but rather are established by school-district trustees, preclude the existence of a property interest. In *Goudeau v. School District Number 37 of Oklahoma City*, the Tenth Circuit recognized a property interest in favor of certain employees of boards of education, although the permissible reasons for a board to suspend, demote, or terminate those employees were not listed in the statute itself, but rather were established by the boards themselves. 823 F.2d 1429, 1430 (10th Cir.1987). In *Goudeau*, the property interest derived from a statute declaring that "a support employee

who has been employed by a local board of education for more than one (1) year shall be subject to suspension, demotion or termination only for cause, as designated by the policy of the local board of education...." *Id.* Accordingly, whether a statute enumerates reasons for the removal of an entitlement or requires that reasons be enumerated elsewhere is not constitutionally significant.

■ By requiring preestablished reasons, the TCNA limits a school district's discretion in decisions not to renew teachers' term contracts. We conclude that this limit on the school district's discretion is sufficient to create a property interest entitled to due process protection.[2]

Our conclusion comports with post-*Hix* decisions in Texas. We have previously acknowledged that the TCNA "was specifically designed to give teachers due process rights when a school district decides not to renew the teacher's contract of employment." *Central Educ. Agency v. George West Indep. Sch. Dist.,* 783 S.W.2d 200, 202 (Tex.1989). The Commissioner has also interpreted the TCNA in the same manner. *See Salinas v. Ben Bolt–Palito Blanco Indep. Sch. Dist.,* No. 202–R1a–882 (Comm'r Educ. April 29, 1983) p. 17; *see also* William T. Armstrong & Rosemary L. Hollan, *Teacher Termination and Nonrenewal in Texas Public Schools,* 16 St. Mary's L.J. 783, 793 (1985) (recognizing TCNA's provision of property interest in reemployment). Even the District itself has conceded that the TCNA provides term-contract teachers with a constitutionally protected property interest.

For these reasons, we hold that the TCNA creates a property interest in term-contract renewal for teachers, warranting due process protection.[3] Because the District failed to provide reasons for nonrenewal, it violated Grounds' right to procedural due process. We, therefore, reverse the judgment of the court of appeals and remand the cause to that court for consideration of the points of error it did not previously address.

Concurring opinion by GONZALEZ, J.

Dissenting opinion by HECHT, J., joined by PHILLIPS, C.J.

GONZALEZ, Justice, concurring.

A teacher and head football coach with a losing record was fired by the Tolar Independent School District. He brought suit against the District for breach of contract and for an alleged violation of his civil rights. After lengthy litigation, the District recognized that it mistakenly failed to give him timely notice and a hearing before he was fired. After settling the breach of **contract** suit, the coach decided to litigate the **tort** action. The trial court found "zero" damages on the tort action and rendered judgment in favor of the District. The court of appeals affirmed. Today the Court reverses the judgment of the court of appeals and the nine year saga of the wannabe coach continues.

I agree with the Court that under the Term Contract Nonrenewal Act, Tex.Ed. Code §§ 21.201–.211, **teachers,** as opposed to **coaches,** have a property interest warranting due process protection; however, this "contorts"[1] case presents a host of problems. The primary problem pertains to alleged damages. Under the facts of this case, when do the contract damages end and when do the tort damages begin? If the trial court had found some damages on the tort action, can the school district apply the amount of damages already paid from the breach of contract action as a

2. This property interest exists despite the fact that a teacher has no contractual right to reemployment. *See Perry v. Sinderman,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972).

3. We therefore disagree with the Fifth Circuit's decision in *English v. Hairston,* which held to the contrary. 888 F.2d 1069, 1070 (5th Cir.

1989). *English* relied on *Hix* which correctly stated the law prior to the TCNA's enactment but no longer accurately reflects a term-contract teacher's interest in renewal.

1. *See Southwestern Bell v. DeLanney,* 809 S.W.2d 493, 495 (Tex.1991) (Gonzalez, J., concurring).

credit? [2] The answers to these questions await resolution some other day. However, one thing is certain—neither the legislature nor this Court intended or presently intends to vest **coaches** with a property interest in coaching.

## I.

The procedural and factual background of this case is complicated. Gary Grounds was employed by the Tolar Independent School District as a teacher and the varsity head football coach pursuant to an employment contract dated April 5, 1983. After a losing season in which his team won only two of ten games, he was notified by the District on February 28, 1984 that it would not renew his employment contract for the 1984–85 school year.

On March 5, 1984, Grounds requested a hearing on the District's proposed nonrenewal of his employment contract. The next day the District declined to provide such a hearing on the basis that he was a probationary employee. Grounds then appealed the District's decision to the Commissioner of Education. The Commissioner determined on May 14, 1984 that Grounds was not a probationary employee, and as such, he was entitled to a hearing. The Commissioner concluded that the District's failure to provide Grounds with a hearing made its decision not to renew the contract invalid. The effect of the Commissioner's ruling was to reinstate Grounds' employment contract for 1984–85. At the time of the Commissioner's decision, Grounds was still employed by the District as a teacher and coach. Thus, he had not lost any wages.

After the Commissioner's decision, Grounds was offered employment as a teacher only, rather than as a teacher/coach, for the 1984–85 school year. This offer was made pursuant to the language of the employment contract which allowed the District to reassign Grounds.[3] Although not required to do so, the District gave Grounds reasons in writing for his "reassignment" on June 7, 1984, and provided a hearing for him before the school board on June 12, 1984. Grounds **declined** the offer for continued employment as a teacher. He appealed his reassignment to the Commissioner of Education. In the meantime, on June 11, 1984, the District filed a declaratory judgment action in Hood County district court seeking a declaration that Grounds was not entitled to be a teacher/coach and that he had no entitlement to continue employment after the expiration of the 1984–85 contract. The trial court granted a declaratory judgment in favor of the District, and the court of appeals affirmed. 694 S.W.2d 241. On April 2, 1986, we reversed the judgment of the court of appeals and dismissed the action, holding that the district court did not have jurisdiction to entertain such a collateral attack on the Commissioner's order. *Grounds v. Tolar Ind. Sch. Dist.*, 707 S.W.2d 889 (Tex.1986).

On October 17, 1988, the Commissioner of Education ruled that the District did not have the right to reassign Grounds for the 1984–85 school year. The Commissioner determined that the District had to employ Grounds in the "same professional capacity" due to its failure to properly follow the procedural requirements of the Term Contract Nonrenewal Act by failing to afford Grounds a hearing after informing him of the proposed nonrenewal on February 28, 1984. The Commissioner noted that a school district generally has the right to reassign an employee, but the District lost this right for the 1984–85 school year by failing to grant Grounds the initial hearing he was entitled to receive.

Grounds then filed this suit against the Tolar Independent School District in district court alleging breach of contract and violation of his due process rights. The parties settled the contract claims with the District paying Grounds $28,000 for the 1984–85 employment contract plus $31,500

---

**2.** Is this a "single injury" case? The "one satisfaction rule" limits an injured party to a single satisfaction for one injury. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1 (Tex.1991).

**3.** The contract contained a clause which stated that an "employee is subject to assignment and reassignment at any time during the contract term."

in attorney's fees. The case then proceeded to a bench trial, based on Grounds' claim that the failure of the District to provide a hearing upon nonrenewal constituted a violation of his due process rights which entitled him to damages under 42 U.S.C. § 1983 and attorney's fees under 42 U.S.C. § 1988.

The trial court granted a "directed verdict"[4] in favor of the District, holding that while the District did deny Grounds his due process rights by failing to give him a hearing regarding the nonrenewal of his employment contract, Grounds suffered **no damages** as a result of this violation. The court of appeals affirmed on an alternative basis, stating that Grounds' due process rights were not violated because he did not possess a property interest in employment with the District. 827 S.W.2d 10. Today the Court reverses the determination of the court of appeals that Grounds did not possess a property interest in his employment with the District.

856 S.W.2d at 417.

## II.

There are significant distinctions between a directed verdict in a jury case and a motion for judgment in a non-jury case. A directed verdict can only be granted because the evidence is legally insufficient; it cannot be granted when the trial court determines that the plaintiff's evidence is factually insufficient to support a judgment. *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983). However, because the trial court is the arbiter of both factual issues and legal issues in a non-jury trial, a motion for judgment can be granted based either on the legal insufficiency **or** the factual insufficiency of the plaintiff's evidence. *See Qantel Business Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 304–05 (Tex.1988).

Even though the trial court in this case granted a "directed verdict" motion, the trial judge made a determination that Grounds had not proved that he incurred damages as a result of the failure of the District to accord him a timely hearing and notice. At the end of the hearing on the motion for judgment, the trial court said:

> I'm going to grant defendant's motion for directed verdict ... I am unable to find any damages that were incurred by the plaintiff in this cause, even if there wasn't due process. I can't find any damages that grew out of the alleged lack of due process ...

Grounds requested findings of fact and conclusions of law. The trial court found that:

> 16. Defendant's failure to provide a hearing for Plaintiff following its decision to nonrenew his contract in February of 1984 constitutes a denial of due process under the Term Contract Nonrenewal Act.
>
> 17. Defendant's denial of due process to Plaintiff was based on a good faith reliance upon advice of counsel retained by Defendant.
>
> 18. Plaintiff suffered no damages from the time he was notified of Defendant's intention to nonrenew his contract for the school year 1984–85 until his appeal was granted by the Commissioner of Education on May 14, 1984.
>
> 20. Plaintiff suffered no damages as a result of Defendant's breach of Plaintiff's employment contract by the attempted reassignment of his duties.
>
> 21. Even if Plaintiff suffered damages as a result of the "reassignment," such damages would be contractual in nature and the Settlement Agreement signed by the parties would dispose of any claim for such damages.[5]

---

**4.** Technically, the use of the term "directed verdict" in a bench trial is incorrect because there is no jury to direct. In this situation, the correct procedure is for the defendant, at the close of the plaintiff's evidence, to make a "motion for judgment." *See McDaniel v. Carruth,* 637 S.W.2d 498, 503 n. 1 (Tex.App.—Corpus Christi 1984, no writ).

**5.** If the trial court had found that damages on the tort were existent, but minimal, such a factual finding could be properly challenged on appeal by claiming that the finding is against the great weight and preponderance of the evidence. *See* Justice Raul A. Gonzalez & Rob Gilbreath, *Appellate Review of a Jury's Finding of "Zero Damages,"* 54 Tex.B.J. 418 (May 1991).

### III.

Grounds alleged that he suffered damages in the amount of $75,000.00 because the District failed to afford him a hearing in connection with the February 28, 1984 nonrenewal letter. He claims that he suffered mental anguish because he was no longer able to continue his lifetime dream of being a coach; because he was questioned as to why he was fired; and because his family was uncertain as to where they would move.[6] However, none of these alleged damages flow from the failure of the District to provide Grounds a procedural due process hearing in March of 1984; all of his claimed damages are directly related to the District's decision not to allow him to coach for them in the future. The District possessed the right not to renew his employment contract if they followed proper procedures. Since the proper procedures were not followed, the District violated Grounds' civil rights, but this violation did not cause any damages to Grounds which were distinguishable from the decision not to renew his contract.

As the trial court determined in its findings of fact, Grounds suffered no damages from February 28, 1984, when the District sent him the nonrenewal notice, until his appeal was granted by the Commissioner of Education on May 14 because he was still employed as a teacher/coach for the District. He then was accorded full due process in the June 1984 reassignment proceedings where he was offered a teaching position without coaching duties. Grounds' alleged damages all relate to his inability to coach rather than his inability to teach; thus, all of his claimed damages flow from the reassignment decision rather than from the nonrenewal decision. He only alleges a failure of the District to afford him his due process rights in connection with its failure to grant him a hearing concerning the nonrenewal notice, but he presented no evidence of damages flowing from this procedural due process violation.

However, according to a recent United States Supreme Court case, the trial court may have erred in one aspect of its findings. In *Farrar v. Hobby*, 506 U.S. ——, ——, 113 S.Ct. 566, 573–74, 121 L.Ed.2d 494, 504 (1992), the Supreme Court stated that a court is obligated to award **nominal** damages when a plaintiff establishes a procedural due process violation but cannot prove actual injury. Thus, although the trial court was correct in its finding that Grounds suffered no actual damages, nominal damages should have been awarded to Grounds in order to compensate for the violation of his procedural due process rights. On remand, therefore, Grounds should be allowed a nominal damage recovery for this constitutional violation.

The court of appeals on remand must also consider Grounds' claim for attorney's fees. Under 42 U.S.C. § 1988, the trial court may award in its discretion reasonable attorney's fees to a prevailing party in an action brought under section 1983. In *Farrar*, the Supreme Court held that a plaintiff who wins nominal damages is a prevailing party under section 1988. *Id.* However, the Court also held that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.* at ——, 113 S.Ct. at 575, 121 L.Ed.2d at 506 (citations omitted). Thus, the trial court did not abuse its discretion in failing to award attorney's fees to Grounds when at most Grounds is only entitled to a nominal damage award.

### IV.

The final issue I would like to address is the scope of the property interest for a

---

This is not the case here. Here, the trial court found that the record contained absolutely no evidence of damages and reasonable minds cannot differ on the matter. This case falls within "zone 1" and can be disposed of by the court "as a matter of law." *See* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev. 515 (1991).

6. However, it is interesting to note that Grounds testified that he has never sought another coaching job. It is common for coaches that are fired by one district to be hired by other districts and work their way up to head coach.

teacher/coach such as Gary Grounds. While this Court today correctly decides that a teacher possesses a property interest in employment under the Term Contract Nonrenewal Act, Tex.Ed.Code §§ 21.201–.211, the Court does not state, and it could not state, that an individual has a property interest in being a coach rather than just being a teacher. In other words, a school district does not have to afford procedural due process rights to reassign a teacher/coach to only teaching duties. The provisions of the Term Contract Nonrenewal Act, which today we conclude grants a property interest in employment for a **teacher,** applies only to the complete nonrenewal of an employment contract rather than the mere reassignment of an employee under the contract.

Thus, there is no violation of due process when a coach is reassigned without a hearing. To hold otherwise would be absurd. High school athletics, and especially high school football, is taken very seriously in this state; many areas of the state take great pride in their high school football programs. One author stated:

> Native Texans, and even transplants from Oklahoma and Arkansas who enjoy watching a good running back, take their high school football seriously. Just drop by the Palace Drug Store in Brownwood or any small town barber shop on a Saturday morning during football season and listen to the conversation. You'll be treated to a replay of Friday's game, a bit of local history on a similar touchdown run 10 or 20 years ago and absolutely nothing about the latest world crisis or the fate of the Cowboys and Oilers.

BILL MCMURRAY, TEXAS HIGH SCHOOL FOOTBALL xiii (1985).

Although there might be great pride in this state in the Dallas Cowboys winning the Super Bowl and/or great disappointment in the improbable loss of the Houston Oilers to the Buffalo Bills in the playoffs, the fact remains that, for a great number of Texans, high school football is king. Another author described Texans' commitment to high school football in this manner:

> [The local high school boosters] are not simply football fans, after all, but community leaders, men who regard the support of high school football as a civic obligation, one more immediate than charity and more profound than voting, something on the order of civil defense.[7]

GEOFF WINNINGHAM, RITES OF FALL 8 (1979).

In my opinion, school boards have the unqualified right to hire, fire or reassign coaches. If Grounds had been reassigned in 1984 for his 2–8 record as a head football coach rather than nonrenewed, then no procedural due process violation would have occurred and this case would not have bounced between the Commissioner of Education and the courts of this state for the last nine years.

In conclusion, in my opinion, the trial court did not err in its factual and legal determinations in this case. However, nominal damages, such as $1.00, should have been awarded under *Farrar.*[8] It is unfortunate that this case must continue, but our procedural rules mandate a remand to the court of appeals.

HECHT, Justice, dissenting.

When the Tolar Independent School District first decided not to renew Coach Grounds' term contract, it refused to give him notice of the reasons for its decision because it believed, incorrectly, that it was not required to do so. The District also refused to afford Grounds a hearing to discuss his nonrenewal. After the April 1 statutory deadline for giving notice of reasons for nonrenewal passed, the District was required by the Term Contract Nonrenewal Act, Tex.Educ.Code §§ 21.201–.211, ["the Act"] to employ Coach Grounds "in the same professional capacity for the suc-

---

7. I wish that this same enthusiasm and passion would be shown for academics, but this is another matter.

8. The trial court's failure to award nominal damages in this case is easily understandable, however, since such damages were not specifically requested by Grounds and the case was tried before the Supreme Court issued the *Farrar* decision.

ceeding school year." *Id.* § 21.204. At first the District refused to employ him in any capacity, and eventually it offered to reinstate him as a teacher but not as a coach. The Commissioner of Education concluded, on appeals by Coach Grounds from the District's decisions, that because the District had failed to give the notice required by statute, Grounds was entitled to continued employment both as a teacher and as a coach. *Grounds v. Tolar Indep. Sch. Dist.*, Docket No. 110–R1a–484 (Comm'r Educ., May 14, 1984); *Grounds v. Tolar Indep. Sch. Dist.*, Docket No. 340–R3–786 (Comm'r Educ., Oct. 17, 1988).

Grounds sued the District for breach of contract and for deprivation of his civil rights under the Fourteenth Amendment to the United States Constitution, article I, section 19 of the Texas Constitution, and 42 U.S.C. § 1983. The contract claim was for damages, including attorney fees and costs, resulting from the District's wrongful refusal to continue Grounds' employment. That claim, including related attorney fees and costs, was settled, leaving only the civil rights claims. In essence, Grounds contends that the District's refusal to give him notice of the reasons for its decision not to renew his contract was a violation of due process for which he is entitled to recover additional damages apart from those incurred from his loss of employment. The trial court held that Grounds' due process rights had been violated, but that he had suffered no damages as a result. Accordingly the trial court rendered judgment for the District. The court of appeals affirmed, but disagreed with the trial court that Grounds had been denied due process. The appeals court held that Grounds had no property interest protected by due process. 856 S.W.2d at 418.

The issue before us is not whether the District violated Grounds' constitutional rights by denying him employment when his term contract had been automatically renewed due to the inadequacy of the notice of nonrenewal. Grounds makes no such argument, and the issue is foreclosed by the settlement of his contract claim and all damages which relate to his denial of employment. We may assume, without de-ciding, that once Grounds' contract was automatically renewed for an additional term, he had a property interest in continued employment to the end of that term that was protected not only by contract law but by constitutional guaranties of due process.

Rather, the issue before us is whether the District's denial of notice and a hearing, by itself, violated Grounds' due process rights. Grounds no longer claims damages because his right to continued employment has been denied; that claim has been settled. Grounds claims damages only because his right to notice and a hearing has been denied. While it is undisputed that the District denied Grounds this right, it is also undisputed that Grounds is not entitled to recover damages unless he has been deprived of an interest in property. The only deprivation he claims is of notice and a hearing. The right to notice and a hearing is not a property interest; notice and a hearing are the process used to protect a property interest, not the interest itself. In essence, Grounds' only remaining claim is that he has a due process right to due process.

The Court's opinion is devoted entirely to the issue of whether term contract public teachers have a property interest in continued employment under the Act. While I therefore regard the issue which the Court decides as immaterial to a resolution of this case, I am nevertheless constrained to explain why I think the Court has decided that issue incorrectly. I do not agree with the Court that the Term Contract Nonrenewal Act, TEX.EDUC.CODE §§ 21.201–.211, imposes any *substantive* restriction on a school board's discretion not to renew term contracts of public teachers. The Act prescribes only the *procedures* for exercising that discretion; it does not limit the reasons for nonrenewal.

Under the Act, school districts are to adopt policies providing for the periodic written evaluation of teachers, § 21.202, establishing reasons for nonrenewal, § 21.-203(b), and prescribing procedures for administrators to follow in recommending that contracts not be renewed, § 21.203(c).

If after considering a teacher's evaluations, a district is inclined to accept a recommendation of nonrenewal, the district must give the teacher notice of its decision by April 1 preceding the expiration of the contract term, § 21.204(a), and of the reasons for that decision, § 21.204(c). The teacher is entitled to a hearing before the board of trustees before the decision is final, § 21.-205, and written, timely notice of whatever action is taken, § 21.206. A teacher aggrieved by the board's decision may appeal to the State Commissioner of Education. § 21.207.

The decision not to renew a term contract is, in the words of the statute, within the "sole discretion" of the school district's board of trustees. § 21.204(a). The Act imposes only two limitations on the exercise of that discretion. One is that the school board must have a reason for nonrenewal which it has adopted as part of the policies of the school district. The other is that the school board must give a teacher notice of the reasons for proposed nonrenewal. If the school board does not give this notice, the contract is automatically renewed. § 21.204(b). The rights to a hearing and an appeal do not limit the school board's discretion but afford a teacher an opportunity to assure that the decision not to renew his contract has been made in the manner prescribed by statute.

It is the first limitation—that the reasons for nonrenewal be school district policy—which the Court considers to be substantive rather than purely procedural. The reality which the Court never confronts is that the only restriction the Act places on school district policy is that it must be consistent with law. *Id.* The requirement that school boards act lawfully does not, of course, create a property right of teachers to continued employment. Subject only to this restriction, school boards may adopt as policy any reason for nonrenewal. They are not limited to basing nonrenewal on inadequate performance. A school board is free to adopt a policy that a good teacher who has performed adequately in all respects can be replaced by someone whom it regards, in its sole discretion, to be a better teacher. The requirement that the reasons

for nonrenewal be part of board policy in no way limits what those reasons can be. The requirement is procedural—it prescribes how reasons for nonrenewal are to be adopted. It is not a substantive limitation on the kinds of reasons allowed. The Court does not, and cannot, point to any such limitation.

The Court cites a number of cases which hold that public employees who can be discharged only for "cause" have a property interest in continued employment. I do not disagree that these cases correctly state the law. Nor do I disagree with the Court that if dismissal is limited to "cause", it makes no difference whether "cause" is set by the Legislature or by the school board. The critical factor is whether the school board's discretion to decide not to renew a teacher contract is subject to any substantive, as opposed to procedural, limitations. "Cause" is such a limitation, as the many cases cited by the Court amply demonstrate. The Act here, however, does not limit the reasons for nonrenewal of teacher term contracts to "cause". § 21.203(a). The Act imposes no substantive limitation at all on the reasons for nonrenewal; it imposes only the procedural requirement that those reasons be adopted as policy by the school board. By contrast, "cause" *is* required to discharge a term contract teacher before the term expires. § 21.210. The cases the Court cites are simply inapposite. The Court cites no case which holds that provisions like those of this Act create a constitutionally protected property right.

In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the United States Supreme Court defined a constitutionally protected property interest:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

When retention of term contract teachers rests entirely within the discretion of the school board, it cannot be said that the

teachers "have a legitimate claim of entitlement" to continued employment. As the Court observes: "The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1154–55, 71 L.Ed.2d 265 (1982). We agreed in *Bexar County Sheriff's Civil Serv. Comm'n v. Davis*, 802 S.W.2d 659, 661 n. 2 (Tex.1990), that civil service rules which permit dismissal only "for cause" create a constitutionally protected property interest. By contrast, the Act does not require "cause" for nonrenewal of term contracts, but only a reason—some reason, any reason—within the sole discretion of the school board.

The Court confuses procedural protections afforded by the State with due process guaranteed by the constitution. A statute which does no more than merely condition an employee's removal on compliance with certain specified procedures creates no right in continued employment. *Bishop v. Wood*, 426 U.S. 341, 345–47, 96 S.Ct. 2074, 2077–79, 48 L.Ed.2d 684 (1976). In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), the Court stated: "The categories of substance and procedure are distinct.... 'Property' cannot be defined by the procedures provided for its deprivation." Although *Loudermill* holds that a state cannot lessen the nature of a property interest by affording it scant procedural protection, the principle on which the case is based cuts both ways. The state's decision to provide or not to provide procedural protections does not itself determine whether the interest involved is or is not protected by constitutional due process.

The distinction between substantive limitations and procedural protections is consistently recognized by federal appellate courts. In *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir.1984), the court stated:

Procedural requirements ordinarily do not transform a unilateral expectation into a constitutionally protected property interest. A constitutionally protected interest has been created only if the procedural requirements are intended to be a "significant substantive restriction" on ... decision making. If the procedures required impose no significant limitation on the discretion of the decision maker, the expectation of a specific decision is not enhanced enough to establish a constitutionally protected interest in the procedures.

In *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir.), *cert. denied*, 493 U.S. 992, 110 S.Ct. 540, 107 L.Ed.2d 537 (1989) (citations omitted), the court stated: "In order to give rise to a constitutionally protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion—as can be found, for example, in a requirement that employees be fired only 'for cause.'" *Accord Hogue v. Clinton*, 791 F.2d 1318, 1324 (8th Cir.) ("Grievance procedures that do not establish any grounds upon which termination must be based do not in themselves create a property interest in employment."), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986); *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983) (per curiam).

The Court characterizes the Act as requiring "preestablished" reasons for nonrenewal, a characterization it appears to consider significant, but which is actually somewhat misleading. It is true, of course, that the reasons for nonrenewal must be found within board policies before a decision not to renew a term contract is made, and to that extent the reasons must be "preestablished". However, the Act does not limit a school board's amendment of its policies from time to time to include reasons for nonrenewal not previously adopted as part of its policies. Nor does the Act preclude a school district from amending its policies in the course of a particular nonrenewal decision to include as a new policy the reason for that decision. To the extent, then, that nonrenewal reasons must be preestablished, that requirement does not impose a substantive restriction on the board's decision making.

The Court's conclusion that term contract teachers have a property interest in continued employment is also at odds with

the statutory scheme governing teacher contracts. A district may choose to offer a teacher a continuing contract, or a probationary contract that may lead to a continuing contract. TEX.EDUC.CODE §§ 13.101–.102. Teachers with continuing contracts may be discharged only for reasons specified by statute, and thus clearly have some entitlement to continued employment. § 13.110. The Court's decision equates the rights of term contract teachers with continuing contract teachers. For this reason the Fifth Circuit correctly held in *English v. Hairston*, 888 F.2d 1069 (5th Cir.1989), that term contract teachers do not have a property right to renewal.

The Court quotes dicta in *Central Educ. Agency v. George West Indep. Sch. Dist.*, 783 S.W.2d 200, 202 (Tex.1989), to the effect that the "Act was specifically designed to give teachers due process rights when a school district decides not to renew the teacher's contract of employment." The holding in *CEA* was that a school district cannot unilaterally modify a term contract after it is executed. This holding was based on contract law, not constitutional law. The Court notably does not quote dicta from *Seifert v. Lingleville Indep. Sch. Dist.*, 692 S.W.2d 461, 462 (Tex.1985), where we said: "The [Act] was enacted to give Texas teachers certain procedural protections." Moreover, as the Fifth Circuit observed in *English, CEA* stopped short of stating that teachers have a property right to term contract renewal under the Act.

The consequences of concluding that the Act creates a property interest are significant. Without such an interest, the State may afford such protections as it considers appropriate. Where such an interest exists, however:

"minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." [Quoting *Vitek v. Jones*, 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980)] . . .

"While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." [Quoting *Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and dissenting in part).]

*Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1493. If, as the Court seems to say, term contract teachers have a property interest in continued employment, then they are entitled not only to the procedural protections of the Act but to full due process rights in renewal of their contracts. The Act cannot limit those rights. To put it directly, Coach Grounds has a constitutional right to continued employment by the Tolar Independent School District which cannot be denied him without full due process protections, regardless of what the Act says, and all other term contract teachers have a similar right. Teachers are limited to the procedural protections of the Act only if they do not have a property interest in contract renewal.

The Court bases its decision upon the United States Constitution, although Grounds specifically relies also upon the Texas Constitution. Our construction of the Fourteenth Amendment is not, of course, binding on the federal courts. They are free to assess the Act differently.

The Court remands the case to the court of appeals to consider the propriety of the trial court's finding that Grounds has suffered no damages from any violation of his constitutional rights. Nothing in the Court's opinion precludes the appeals court from upholding that finding on remand, or of limiting Grounds to the recovery of nominal damages.

The lower courts correctly disposed of Grounds' claims in this case, and I would affirm their judgments. Accordingly, I dissent.