TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00325-CV






Sylvia Lewis, Appellant


v.


Austin Independent School District and Felipe Alanis, Commissioner of Education

of the State of Texas, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. GN002575, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



 This is a teacher term-contract nonrenewal case. The Austin Independent School
District ("Austin ISD") Board of Trustees voted not to renew the term teaching contract of appellant
Sylvia Lewis as principal of Lyndon Baines Johnson High School. The Commissioner of Education
affirmed the school board's decision. Lewis sued Commissioner of Education Felipe T. Alanis (1) and
the Austin Independent School District for judicial review of the commissioner's order affirming the
decision by the school board to nonrenew Lewis's teaching contract under the Term Contract
Nonrenewal Act ("TCNA"). Tex. Educ. Code Ann. §§ 21.201-.213 (West 1996). The district court
upheld the commissioner's order.

 On appeal, Lewis contends in four issues that she did not receive a fair hearing
because the administrative law judge ("ALJ") who presided over Lewis's administrative appeal was
not impartial; the commissioner's decision was clearly erroneous because he failed to provide Lewis
with annual performance evaluations or a warning of contract nonrenewal as required by the Texas
Education Code; and the commissioner's decision is not supported by substantial evidence. Because
we hold that the commissioner's decision is supported by substantial evidence and is not erroneous,
we affirm the judgment of the district court.


FACTUAL AND PROCEDURAL BACKGROUND

Lewis's Employment with Austin ISD

 We will draw on the commissioner's findings of fact in his decision for our discussion
of the factual background because the findings are unchallenged on appeal. Lewis was employed
by Austin ISD effective July 1, 1996, and then under a three-year contract beginning with the 1997-1998 school year. She was assigned as the principal of Lyndon Baines Johnson High School, a
school located in a low-to-moderate income neighborhood in East Austin. The LBJ school also
serves as a "school within a school" because the district's Science Academy, a magnet school
designed to draw gifted and talented students from all geographic areas of the school district who
are interested in science and technology, is located on the school's campus.

 Lewis arrived at Austin ISD with excellent credentials and an exemplary record of
achievement in education. After receiving a master's degree in education from Ohio State
University, she earned board certifications as an advanced professional educator in reading, a
secondary school principal, and a mid-management administrator. Before her arrival at the LBJ
school, she served as a vice principal at a high school and as principal of a talented and gifted magnet
school as well as a science and math technology middle school.

 For her first year with the school district, Lewis received a very favorable evaluation.
In September 1997, Lewis executed a three-year contract. Shortly thereafter, Lewis received a
memorandum from her supervisor, area superintendent Dr. Glenn Nolly, expressing concern that
parents were complaining that they were having difficulty getting in touch with her. In March 1998,
Nolly sent a memorandum to Lewis concerning a series of restroom fires at the school that had not
been reported to him. Throughout 1998 and 1999, Nolly communicated with Lewis concerning
various problems at the school and deficiencies in her job performance. A primary source of
controversy was the perceived preferential treatment by the district of the science academy at the
expense of the neighborhood students. The district commissioned a study to address problems in
balancing the magnet school with the comprehensive school, which seemed to be a major focus of
the district's growing dissatisfaction with Lewis. In May 1999, Nolly met with Lewis, outlining
complaints he had received that she had failed to address student disciplinary problems and failed
to communicate effectively with staff, parents, and students. Nolly told Lewis that "if she wanted
to remain at LBJ, these things needed to be changed right away." In June 1999, Nolly placed Lewis
on a professional improvement plan designed to improve her communication and leadership skills. 
Lewis objected to the plan. In October 1999, Nolly met with Lewis to bring continuing concerns to
her attention, again giving her an opportunity to resolve them.

 After a mid-year review in January 2000 to assess the progress of the performance
improvement plan, on March 3, 2000, Nolly determined that Lewis had not improved adequately in
her areas of deficiency and recommended that Lewis's contract not be renewed. By letter dated
March 28, 2000, Superintendent Pascal Forgione notified Lewis that he recommended nonrenewal
of her contract for the 2000-2001 school year for the following reasons:


1. Inefficiency or incompetency in performance of duties;


2. Failure to comply with such requirements as the Board may prescribe for
achieving professional education, improvement and growth; and


3. For other good cause as determined by the Board and based upon
recommendation of the Superintendent, good cause including, but not limited
to, the failure of a professional to meet the accepted standards of conduct for the
professional employee as generally recognized and applied to the Austin
Independent School District.



Acting on the superintendent's recommendation, the school board notified Lewis of proposed
nonrenewal. See Tex. Educ. Code Ann. § 21.206. Lewis timely requested a hearing before the
board. At the conclusion of the hearing on May 24, 2000, the board voted 7-1 to nonrenew Lewis's
contract.

 Lewis filed a petition for review with the commissioner alleging that the board's
decision was arbitrary, capricious, unlawful, and not supported by substantial evidence. See id.
§ 21.209. The commissioner denied the appeal. Thereafter, Lewis appealed the commissioner's
decision to the district court, which affirmed the commissioner's order.


Nonrenewal Policies

 Texas teachers with experience may be employed under either continuing contracts
or annually renewable term contracts. Compare id. §§ 21.151-.160 with §§ 21.201-.212 (West
1996). Most teachers are employed under term contracts. See Grounds v. Tolar Indep. Sch. Dist.,
856 S.W.2d 417, 418 (Tex. 1993). The TCNA was enacted in 1981 to provide term contract teachers
with procedural protections. (2) Id.; Central Educ. Agency v. George West Indep. Sch. Dist., 783
S.W.2d 200, 201-02 (Tex. 1989).

 The TCNA requires automatic renewal of a teacher's term contract unless the school
district complies with certain statutory prerequisites. See Tex. Educ. Code Ann. §§ 21.201-.213. 
Under the TCNA, employment policies adopted by the board of trustees of a school district "must
include reasons for not renewing a teacher's contract at the end of the school year." Id. § 21.203(b). 
A teacher must be provided with notice of the reason for the proposed nonrenewal and given an
opportunity for a hearing. Id. §§ 21.206-.207.


Nonrenewal Hearing and Appeal Procedure

 When a teacher requests a hearing after receiving notice of proposed nonrenewal, as
here, the school board may conduct its own hearing under section 21.207(b) and render its own
decision under section 21.208(b). Id. §§ 21.207(b), .208(b). A teacher aggrieved by the board's
decision may appeal to the Commissioner of Education. Id. § 21.209. The commissioner reviews
the board's decision and may not substitute his or her judgment for that of the board "unless the
board's decision was arbitrary, capricious, unlawful, or not supported by substantial evidence." Id.

 Either party may then appeal the commissioner's decision to district court. Id.
§ 21.307 (West 1996). The court reviews the evidentiary record made at the local board level and
any evidence taken by the commissioner, but may not take additional evidence. Id. § 21.307(e). 
Here, the only evidence taken was before the board at the public hearing. The court may not reverse
the commissioner unless the findings were not supported by substantial evidence or unless the
commissioner's conclusions of law were erroneous. Id. § 21.307(f).

 The decision subject to our review is that of the commissioner. Id. § 21.307(a);
Montgomery Indep. Sch. Dist. v. Davis, 34 S.W.3d 559, 562 (Tex. 2000). This Court reviews the
commissioner's order under a substantial evidence review. Tex. Educ. Code Ann. § 21.307(f);
Davis, 34 S.W.3d at 562; Hightower v. State Comm'r of Educ., 778 S.W.2d 595, 597 (Tex.
App.--Austin 1989, no writ). We must first determine whether the evidence as a whole is such that
reasonable minds could have reached the conclusion that the agency must have reached to take the
disputed action. Texas State Bd. of Dental Exam'rs v. Sizemore, 759 S.W.2d 114, 116 (Tex. 1988);
Ramirez v. Texas State Bd. of Med. Exam'rs, 995 S.W.2d 915, 919 (Tex. App.--Austin 1999, pet.
denied). The test is not whether the agency made the correct conclusion but whether some
reasonable basis exists in the record for the agency's action. Railroad Comm'n v. Pend Oreille Oil
& Gas Co., 817 S.W.2d 36, 41 (Tex. 1991); Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc., 665 S.W.2d 446, 452 (Tex. 1984). Nevertheless, we must ensure that the actions of the
school administration were not arbitrary and capricious.

 For purposes of substantial evidence review, questions of statutory interpretation are
questions of law and are not entitled to a presumption of validity. Hightower, 778 S.W.2d at 597. 
But statutory construction by the administrative agency charged with the statute's enforcement is
entitled to serious consideration if the construction is reasonable and does not contradict the statute's
plain language. Dodd v. Meno, 870 S.W.2d 4, 7 (Tex. 1994). Thus, because of the commissioner's
expertise and experience, we give deference to his interpretation of the TCNA.


Austin ISD's Nonrenewal Policies

 Local management and control of public schools is a legislative policy manifested
throughout the statutes concerning education. See Ysleta Indep. Sch. Dist. v. Meno, 933 S.W.2d 748,
752 (Tex. App.--Austin 1996, writ denied); Amarillo Indep. Sch. Dist. v. Meno, 854 S.W.2d 950,
954 (Tex. App.--Austin 1993, writ denied). School districts locally adopt the reasons to decline
renewal of teacher's term contracts. Grounds, 856 S.W.2d at 418. By enacting the TCNA, however,
the legislature constrains school districts by requiring that those reasons be "preestablished," as a part
of the school's official policies, providing a "substantive limit" on a school district's decision to
nonrenew a term contract. Id.; see Tex. Educ. Code Ann. § 21.203(b).

 The decision of a school district to nonrenew must be "predicated on one or more of
the previously established reasons." Grounds, 856 S.W.2d at 418. Austin ISD adopted Board Policy
DDA(LOCAL), establishing the reasons for nonrenewing the term contract of a professional
employee. The three grounds listed in the superintendent's notice letter were among the reasons set
forth in the policy.


Commissioner's Findings of Fact and Conclusions of Law

 The commissioner's decision contained findings of fact. Because Lewis has not
challenged the commissioner's findings of fact, we must "treat them as valid and subsisting facts by
which to judge the correctness of the [commissioner's] conclusions of law." Lone Star Greyhound
Park, Inc. v. Texas Racing Comm'n, 863 S.W.2d 742, 752 (Tex. App.--Austin 1993, writ denied). 
Among the findings of fact issued by the commissioner as supported by substantial evidence in the
evidence presented to the board were the following:


2. Petitioner received a favorable evaluation in 1996-97, her first year with the
district. Petitioner's written evaluation for the 1997-98 school year was not
produced at the hearing. Dr. Glen Nolly, petitioner's supervisor and an area
superintendent, contends that he prepared an evaluation but that it is missing
from his files. Petitioner's evaluation for the 1998-99 school year noted
deficiencies in numerous areas.


3. From 1997-98 to 1999-2000, Nolly received numerous complaints regarding
petitioner. Nolly notified Petitioner of the complaints and provided her with
verbal and written corrective feedback. Many of the complaints alleged that
petitioner was not addressing student disciplinary problems and that she failed
to communicate effectively with staff, parents, students, and others about
important issues.


8. Petitioner had performance deficiencies that constituted grounds for nonrenewal
under DDA (LOCAL), including continuing problems with communication,
decision-making, and fostering a positive school climate despite opportunities
for remediation.



DISCUSSION

 In her first issue on appeal, Lewis contends that the commissioner abused his
discretion in failing to recuse the agency ALJ who presided over the administrative appeal. Because
the ALJ had previously been employed by a law firm that had represented the school district, Lewis
urged that her impartiality was in question.

 Rule 18a of the Texas Rules of Civil Procedure provides for the recusal of a judge
upon a motion filed ten days before the trial or hearing: "The motion shall be verified and must state
with particularity the grounds why the judge before whom the case is pending should not sit." Tex.
R. Civ. P. 18a(a). (3) If a party fails to comply with the rule, she waives her right to complain of the
erroneous denial of a recusal motion. In re Union Pac. Res. Co., 969 S.W.2d 427, 428 (Tex. 1998).
The motion must be made "on personal knowledge and shall set forth such facts as would be
admissible in evidence provided that facts may be stated upon information and belief if the grounds
of such belief are specifically stated." Tex. R. Civ. P. 18a(a).

 Lewis first raised the issue of recusal in a motion to vacate following the
commissioner's issuance of his decision. In an unverified motion to vacate, Lewis alleged that the
ALJ


should have been recused from further proceedings because her impartiality could
have reasonably been questioned in that the judge had a personal bias or prejudice
concerning the subject matter. In this connection, movant has reason to believe that
[the ALJ] was previously employed by the law firm McGinnis, Lochridge & Kilgore,
and during such employment, said law firm represented Austin Independent School
District ("AISD"). Therefore, her impartiality in deciding cases or making rulings
on legal issues could reasonably be questioned where AISD is a party before her.



The motion to vacate does not satisfy the dictates of the rule in any respect: it was untimely because
it was filed after the proceeding instead of ten days before the hearing; it was unverified; and it
further failed to particularize the grounds for recusal based on personal knowledge and facts that
would be admissible as evidence. Raising the glimmer of a conflict in an untimely and conclusory
manner is insufficient to invoke procedures under the rule. Because Lewis failed to comply with the
mandates of the rule, we hold that Lewis waived the issue of recusal.

 Even apart from the lack of compliance with the rule, Lewis does not identify grounds
for which recusal is required. Her sole contention is that the ALJ previously worked for a law firm
that at one time had represented Austin ISD. There is no contention that the ALJ or her law firm
were employed on or had knowledge of the controversy at issue here. The record does not show that
the assigned ALJ had a bias or conflict of interest based on a prior attorney-client relationship. Other
than a conflict based on the ALJ's prior employment, Lewis does not state any other respect on
which the ALJ's "impartiality might reasonably be questioned." See Tex. R. Civ. P. 18b(2)(a).

 Moreover, the board made the decision to nonrenew Lewis's contract. Thereafter,
the ALJ proposed a decision containing findings of fact and conclusions of law for the
commissioner's consideration. The commissioner upheld the board's decision to nonrenew Lewis's
contract. The ALJ did not receive evidence, nor did she conduct any proceedings. Without any
competent evidence establishing an issue of bias, the ALJ was not required to recuse herself or grant
the motion to vacate. See Vandygriff v. First Sav. & Loan Ass'n, 617 S.W.2d 669, 673 (Tex. 1981)
(court presumes agency performs duties in compliance with law). Lewis has not shown that her
claim of potential bias was supported by facts in the record or was likely to have led to an erroneous
decision on the part of the commissioner. See Tex. Educ. Code Ann. § 21.307(g). We overrule
Lewis's first issue.

 In her second issue on appeal, Lewis urges that the commissioner's decision was
erroneous as a matter of law because Austin ISD failed to provide Lewis with annual performance
evaluations, as required by law. Specifically, Lewis argues that she received only one performance
evaluation contrary to the annual evaluation requirement set forth in section 21.203(a) of the
education code. Because the statutory directive is mandatory, Lewis argues, the district's failure to
comply with the requirement constituted a violation of her contract.

 Section 21.203(a) provides that local school boards must require a "written evaluation
of each teacher . . . at annual or more frequent intervals," which evaluation the board is obliged to
consider "before making a decision not to renew a teacher's contract if the evaluations are relevant
to the reason for the board's action." Id. § 21.203(a). Board Policy DDA(LOCAL) incorporates this
provision: "The Board shall consider the recommendations provided by the Superintendent, written
evaluations of the professional being considered for non-renewal if the evaluations are relevant to
the reason for the Board's action and the reasons for the recommendations."

 The record shows that Lewis received a favorable evaluation for the 1996-97 school
year. Lewis's evaluation for the 1997-98 school year was not produced at the hearing and is
therefore not included in the record. Dr. Nolly testified that he performed an evaluation at the end
of the school year and that he had an evaluation conference with Lewis, but that the document was
"missing from my file." In his decision, the commissioner found that Nolly's inability to produce
a written evaluation for Lewis for 1997-98 "is disconcerting." It is undisputed that Lewis received
an evaluation in June 1999 for the 1998-99 school year, although two slightly differing versions of
the evaluation are included in the record. Nolly testified that one version was complete and the other
incomplete because Lewis left the conference before it was over, presumably with a copy of the
incomplete version, and refused to sign the document.

 Although Lewis urged on appeal that she had received no warning of nonrenewal, the
record demonstrates otherwise. Beginning in the 1997-98 school year, Nolly repeatedly notified her
of performance deficiencies, gave verbal and written corrective feedback, and presented her with
growth and improvement plans designed to improve her performance. In June 1999, Nolly issued
a performance improvement plan, a formal plan to address problems and plan for improvement. 
Nolly presented the plan to Lewis in his office; Lewis refused to accept the plan and voiced her
disagreement with the problems articulated in the plan and the proposal for improvement. The
commissioner's findings of fact, for which there was ample evidence in the record, reflected the
continuing problems and the administration's efforts to address them.

 We agree with Lewis's position that she is entitled to annual evaluations. Compliance
with statutory requirements is essential to the integrity of procedures regarding term contracts and
nonrenewal. Although annual evaluations are required, however, the statute also requires that the
board "must consider the most recent evaluations before making a decision not to renew a teacher's
contract if the evaluations are relevant to the reason for the board's action." Tex. Educ. Code Ann.
§ 21.203(a) (emphasis added). Thus, the board must consider the most recent relevant evaluations.

 The commissioner found that Lewis received her 1996-97 and 1998-99 evaluations,
and that her supervisor testified that he prepared her 1997-98 evaluation, but that it was missing from
his files. Lewis disputed that she received an evaluation for the 1997-98 school year. But Lewis's
remedy if she believed she did not receive a timely evaluation for the 1997-98 school year was not
to challenge the nonrenewal process, but to file a grievance in accordance with the district's
grievance policy. See Amarillo Indep. Sch. Dist., 854 S.W.2d at 954. Lewis obviously believes she
was treated unfairly by the district, but her remedy for a procedural deficiency was to file a timely
grievance when she became aware of the omission. Lewis did not file a grievance about her 1997-98
evaluation or any other evaluations.

 Complaints of procedural irregularities in the appraisal process may not be resurrected
at the time of the contract nonrenewal process. We agree with the commissioner that allowing an
employee to contest a nonrenewal based on alleged procedural irregularities in the appraisal process
would interject issues that may not relate to the validity of the appraisal or the reasons for the
nonrenewal. In the absence of a showing that the 1997-98 evaluation was relevant to the board's
actions, the alleged deficiencies in the appraisal process do not establish that the commissioner's
decision is arbitrary, capricious, or unlawful. We overrule Lewis's second issue.

 In her third issue on appeal, Lewis contends that there is not substantial evidence in
the record to support a finding by the commissioner that the Austin ISD board considered Lewis's
"most recent evaluations," as specified in section 21.203(a) of the education code. She also urges
that the board failed to consider the evaluations before notifying Lewis of the proposed nonrenewal
as required by its own policies. Substantial-evidence review is a limited standard of review. Davis,
34 S.W.3d at 556. As the commissioner correctly concluded, substantial evidence exists in the
administrative record to support the determination that the board did review Lewis's most recent
evaluation before voting to propose the nonrenewal of her contract. Finding of fact number two
reflected the existence of the evaluations in evidence before the board. In addition, the board had
before it the superintendent's notice of nonrenewal, which was sent to Lewis on March 28, 2000,
stating:


 After consideration of your most recent evaluation and grounds for the
recommendation, the Board voted to approve my recommendation and directed me
to send you notice of the proposed nonrenewal of your three-year contract for the
2000-2001 school year pursuant to the Texas Education Code, Section 21.206.



Lewis did not object to the admissibility of the letter or challenge the statements contained therein. 
Thus, the undisputed evidence at the hearing reflects that the board considered the most recent
evaluation and then voted to nonrenew. The superintendent's letter then followed the board's vote. 
The findings and decision of the commissioner are presumed to be supported by substantial
evidence, and the burden is on Lewis to prove otherwise. Texas Health Facilities Comm'n, 665
S.W.2d at 453. This she failed to do. We overrule Lewis's third issue on appeal.

 Lewis next argues that she failed to receive notice that she was at risk for nonrenewal. 
Although Austin ISD's local regulation directs the superintendent to advise all term contract
employees by the end of February if they are in jeopardy of nonrenewal, Lewis contends that she was
not notified in a timely manner of her possible nonrenewal. Specifically, she asserts that the
district's regulations "expressly require[] a conference with the principal by December 1 of the
current school year, and further impose[] a duty upon the superintendent to notify those principals,
whose contracts remain in doubt, during the month of February of the same school year."

 The local regulations provide a schedule for appraisal of administrators: By December 
1, evaluators "should begin conferences with staff members whose contracts are in question," and
during February, "any staff member whose re-employment remains in doubt should be so advised
by the Superintendent or designee." By its language, the regulation does not impose a duty to warn
or notify by a specified deadline. That these dates are guidelines is clear from the use of the word
"should" instead of a mandatory word such as "must" or "shall." In contrast to these discretionary
guidelines, other aspects of the schedule provide for required notice and are therefore mandatory. 
Thus, the regulations require that the superintendent "shall notify" an administrative employee if the
district intends to hire him or her for the next school year, and "will send" a written notice to an
individual by April 1 that a new contract will not be offered; accordingly, on March 7, 2000, the
interim director of the Department of Human Resources sent Lewis a notice of nonrenewal with
reasons stated.

 Nevertheless, the commissioner acknowledged in his decision that the district failed
to comply with its own regulations by not notifying Lewis by the end of February 2000 that her
contract might not be renewed. We agree with the commissioner that the failure to follow its
regulations "reflects negatively upon the administration and may lead to a lack of trust from
employees and the public." But we must also agree with the commissioner's conclusion that the
failure to timely inform Lewis of her possible nonrenewal does not warrant reversal of the board's
decision. Moreover, the record reflects that Lewis was aware in February that Nolly had
recommended her for nonrenewal. In a memorandum to Nolly dated March 6, 2000, Lewis advised
Nolly that the Director of Human Resources had advised her of the recommendation on February 29
when Nolly was on leave. Lewis was aware that her contract was in jeopardy before receiving the
statutory notice of nonrenewal from the board. Given the extensive communication and feedback
between Nolly and Lewis, the absence of a formal notification within the discretionary deadlines set
forth in the regulations does not result in a decision that is arbitrary, capricious, or unlawful. 
Moreover, on March 28, 2000, Austin ISD timely issued Lewis the notice of proposed nonrenewal
as required by statute. Tex. Educ. Code Ann. § 21.206(a). We may not reverse a decision of the
commissioner based on a procedural irregularity by the board unless the irregularity was likely to
have led to an erroneous decision by the commissioner. Id. § 21.307(g). We conclude that it did not. 
The finding that Lewis had performance deficiencies that constituted grounds for nonrenewal was
amply supported by the record; she had notice of the deficiencies and the risk of nonrenewal. We
overrule Lewis's fourth issue on appeal.


CONCLUSION


 Because the commissioner's decision was supported by substantial evidence and
because Lewis failed to demonstrate that his conclusions of law were erroneous, the district court
did not err in affirming the commissioner's decision. Accordingly, we overrule Lewis's issues on
appeal and affirm the judgment of the district court.



 __________________________________________

 Jan P. Patterson, Justice

Before Justices Kidd, B. A. Smith and Patterson

Affirmed

Filed: January 16, 2003

1. We have substituted the current Commissioner as the appropriate party. See Tex. R. App.
P. 7.2(a).
2. Act of May 25, 1981, 67th Leg., R.S., ch. 765, § 2, 1981 Tex. Gen. Laws 2847, 2847
(amended 1984, 1987, 1995) (current version at Tex. Educ. Code Ann. §§ 21.201-.211). For
purposes of the TCNA, the definition of "teacher" includes a principal. Id. § 21.201.
3. Appellees do not dispute the applicability of rule 18a to an ALJ. Further, the Texas Rules
of Civil Procedure apply to hearings before the commissioner. See 19 Tex. Admin. Code § 157.1(b)
(2000).